## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CAPITOL INFRASTRUCTURE, LLC, et al.,[1] | Case No. 12-11362 (KG) |
| Debtors. | (Joint Administration Requested) |
| | **Objection Deadline: TBD**<br>**Hearing Date: TBD** |

### MOTION FOR AN ORDER (A) (I) APPROVING SALE PROCEDURES FOR OTHER ASSETS; (II) SCHEDULING A HEARING TO CONSIDER SALE OF OTHER ASSETS; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF; AND (B) (I) AUTHORIZING THE SALE OF OTHER ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO AND (IV) GRANTING RELATED RELIEF

Capitol Infrastructure, LLC, on behalf of itself and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby submits this motion (the "Motion") for entry of (A) an order, substantially in the form annexed hereto as **Exhibit A** (the "Other Assets Sale Procedures Order"), (i) establishing sale procedures (the "Other Assets Sale Procedures"), substantially in the form annexed as **Exhibit 1** to the Other Assets Sale Procedures Order, with respect to the sale or sales (the "Sale" or "Sales") of certain of the Debtors' Assets (the "Other Assets"), as identified in paragraph 11 below; (ii) scheduling a hearing (the "Other Assets Sale Hearing") on the Sale(s) of the Other Assets and setting objection and bidding deadlines with respect to the Sale(s); (iii) directing that notice of the Other

---

[1]     The Debtors are the following entities (last four digits of EIN in parentheses): Accelera Services, LLC (6589); Amenity Broadband, LLC (7012); BA Infrastructure SPE, LLC (6610); Baldwin County Internet/DSSI Service, L.L.C. (8858); Broadstar, LLC (8917); Capitol Broadband Development Company, LLC (4515); Capitol Broadband Management Corporation (4260); Capitol Broadband Ventures, LLC (3976); Capitol Infrastructure, LLC (0323); Capitol Infrastructure CP Funding, LLC (1008); CB Infrastructure SPE, LLC (4470); Infrastructure SPE, LLC (1144); and SmartResort Co., LLC (3706). The Debtors' corporate headquarters is located at 111 Corning Road, Suite 250, Cary, NC 27518.

Assets Sale Procedures and the Sale(s) be given, substantially in the form annexed as **Exhibit 2** to the Other Assets Sale Procedures Order (the "Other Assets Sale Notice"); (iv) directing that notice of the assumption and assignment of certain executory contracts and leases (the "Assumed Contracts") be given substantially in the form annexed as **Exhibit 3** to the Other Assets Sales Procedures Order (the "Assumed Contract Notice") and (v) granting related relief; and (B) an order, substantially in the form annexed to the Motion as **Exhibit B** (the "Other Assets Sale Order"), (i) authorizing the Sale of the Other Assets free and clear of liens, claims, encumbrances, and other interests pursuant to the terms of one or more asset purchase agreements (the "Purchase Agreement"),[2] substantially in the form attached hereto as **Exhibit C,** to a qualified bidder or bidders ("Qualified Bidder") submitting the highest or otherwise best offer for one or more Other Assets at a proposed auction (the "Other Assets Auction"); (ii) authorizing and approving the Purchase Agreement; (iii) approving the assumption and assignment of the Assumed Contracts, as necessary in connection with the Sale; and (iv) granting related relief.  In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction and Venue

1.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 105(a), 363, and 365 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice

---

[2]    Terms not defined herein shall have the meanings ascribed to them in the Purchase Agreement.

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## General Background

2.      On April 26, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3.      The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      No trustee, examiner, creditors' committee, or other official committee has been appointed in the Debtors' chapter 11 cases.

5.      A description of the Debtors' business, capital structure, and the circumstances leading to the chapter 11 filings is set forth in the Declaration of Glen D. Lang in Support of Chapter 11 Petitions and First Day Motions (the "Lang Declaration") filed on the Petition Date and incorporated herein by reference.

## Relief Requested

6.      By this Motion, the Debtors seek entry of an order, substantially in the form of the proposed Other Assets Sale Procedures Order attached hereto as **Exhibit A**, (i) authorizing and approving the Other Assets Sale Procedures to be employed in connection with the proposed Sale(s); (ii) scheduling the Other Assets Auction and Other Assets Sale Hearing; and (iii) approving the form and manner of the Other Assets Sale Notice and the Assumed Contract Notice.

7.      The Debtors further request that, at the Other Assets Sale Hearing, the Court enter a Other Assets Sale Order substantially in the form of **Exhibit B** hereto (i) approving

#16036252 v6

a Sale or Sales to one or more Qualified Bidders submitting the highest or otherwise best offer for one or more Other Assets at the Other Assets Auction (the "Successful Purchaser"), (ii) approving the Purchase Agreement or a substantially similar asset purchase agreement with the Successful Purchaser(s), and (iii) authorizing the Debtors (a) to sell the Other Assets, free and clear of all liens, claims, encumbrances, and interests (other than certain specified assumed liabilities), and (b) to assume and assign to the Successful Purchaser(s) the applicable Assumed Contracts.

A.    **The Proposed Sale to Hotwire Communications, Ltd.**

8.    On April 26, 2012, Debtors and Hotwire Communications, Ltd. ("Hotwire") entered into that certain Asset Purchase Agreement (the "Stalking Horse Purchase Agreement"), whereby Hotwire agreed to purchase certain of the Debtors' assets (the "Purchased Assets"), subject to higher and better offers at an auction (the "Purchased Assets Auction") and the approval of this Court.

9.    Under the Stalking Horse Purchase Agreement, Hotwire will purchase certain of the Debtors' assets, including the Dish Network Assets[3], the DirecTV Assets and the FOVO Assets, located at approximately 190 Properties identified on Exhibit A to the Stalking Horse Purchase Agreement, and the assumption and assignment of certain executory contracts and leases related thereto, as more particularly described in section 2.1 and 2.3(b) of the Stalking Horse Purchase Agreement. Hotwire is not, however, purchasing (i) those assets related to the Laguna Woods, California property; (ii) those properties where rights of entry were obtained by the Sellers but for which the Sellers have not yet commenced work; (iii) bulk DirecTV properties

_____

[3]    Terms not defined in this Paragraph 9 shall have the meanings ascribed to them in the Stalking Horse Purchase Agreement.

identified on Schedule 2.2(c) of the Stalking Horse Purchase Agreement; and (iv) any of the Debtors' other assets not included in the Stalking Horse Purchase Agreement.

10.　　On April 27, 2012, the Debtors filed the *Motion for an Order (A)(I) Approving Sale Procedures; (II) Approving a Break-Up Fee and Expense Reimbursement; (III) Scheduling a Hearing to Consider Sale of Assets; (IV) Approving Form and Manner of Notice Thereof; and (v) Granting Related Relief; and (B)(I) Authorizing the Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (iii) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (v) Granting Related Relief* (the "Sale Procedures Motion") [D.I. 11].    The Sale Procedures Motion seeks approval of proposed procedures for selling the Purchased Assets at the Purchased Assets Auction.

**B.　　Proposed Sale of the Other Assets**

11.　　By this Motion the Debtors seek approval of proposed procedures for selling the Other Assets at the Other Assets Auction.    The Other Assets include (i) those assets related to the Laguna Woods, California property; (ii) the approximately 7,000 rights of entry obtained by Sellers for properties for which the Sellers have not yet commenced work; (iii) certain bulk DirecTV properties; (iv) certain DirecTV properties and (v) all of Sellers' remaining furniture, fixtures and equipment not otherwise located at the properties, including excess computers, office equipment, supplies, inventory and telecom and other related equipment (but excluding those assets to be sold as referenced in Section 2.2(a) of the Asset Purchase Agreement).

#16036252 v6

## C.    The Bidding Procedures

### Participation Requirements

12.    In order to participate in the bidding process or to otherwise be considered for any purpose hereunder, a person interested in the acquisition of one or more of the Other Assets (a "Potential Purchaser") must first deliver the following materials to the Debtors and their counsel:

a.    An executed confidentiality agreement in form and substance satisfactory to the Debtors, in consultation with Unicredit Bank AG ("the DIP Lenders"); and

b.    The most current audited and latest unaudited financial statements (collectively, the "Financials") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of the Sale, (x) Financials of the financial sponsor of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors, in consultation with the DIP Lenders, and (y) the written commitment acceptable to the Debtors, in consultation with the DIP Lenders, of the financial sponsor of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with the Sale.  In the event that a Potential Bidder is unable to provide Financials, the Debtors may accept such other information sufficient to demonstrate to the satisfaction of the Debtors, in consultation with the DIP Lenders and the Official Committee of Unsecured Creditors (the "Committee"), that such Potential Bidder has the financial wherewithal to consummate the Sale.

13.    A "Potential Bidder" is a Potential Purchaser whose Financials or other information demonstrate the financial capability to consummate and perform obligations in connection with the Sale(s) and which the Debtors, in consultation with the Committee and the DIP Lenders, determine is reasonably likely to make a *bona fide* offer and would be able to consummate a proposed Sale(s) of the Other Assets for which the Potential Purchaser is interested in bidding if selected as the Successful Purchaser (as defined herein).  The Debtors will promptly advise each Potential Purchaser, the DIP Lenders and the Committee, if applicable,

#16036252 v6

in writing of the Debtors' determination whether or not the Potential Bidder is a Qualified Bidder.

### Obtaining Due Diligence Access

14.    The Debtors shall provide each Potential Bidder reasonable due diligence information as requested by the Potential Bidder.  The due diligence period will end on the Other Asset Bid Deadline (as such term is defined below).

15.    In connection with providing information to parties interested in acquiring one or more of the Other Assets, the Debtors shall not furnish any confidential information relating to the Debtors, their businesses, or the Sale to any person except a Potential Bidder.

16.    The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  No conditions relating to the completion of due diligence shall be permitted to exist in any bid after the Other Assets Bid Deadline.

### Other Assets Bid Deadline

17.    The deadline for submitting bids by a Potential Bidder shall be [May 25, 2012 at 12:00 p.m.] (prevailing Eastern Time) (the "Other Assets Bid Deadline").

18.    Prior to the Other Assets Bid Deadline, a Potential Bidder that desires to make a bid for one or more of the Other Assets shall deliver written copies of its bid to: (i) counsel to the Debtors, Wyrick Robbins Yates & Ponton LLP, 4101 Lake Boone Trail, Suite 300, Raleigh, NC 27607, Attn: Larry E. Robbins; (ii) counsel to the Debtors, Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, DE  19801, Attn: David B. Stratton; (iii) counsel to the DIP Lenders, Unicredit Bank AG, Mayer Brown LLP, 1675 Broadway, New York, New York  10019-5820, Attn: Howard S. Beltzer; (iv) counsel to the DIP

Lenders, Unicredit Bank AG, Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn.: Mark D. Collins; and (v) counsel to the Committee.

### Due Diligence From Bidders

19.　　Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale. Failure by a Potential Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a bid made by such Potential Bidder is not a Qualified Bid.

### Bid Requirements

20.　　A bid must be in writing and must set forth an irrevocable offer from a Potential Bidder for the Other Assets and:

a. State that the Potential Bidder offers to consummate the Sale pursuant to an agreement that has been marked to show amendments and modifications to the Purchase Agreement, including those Other Assets with respect to which the bid is made ("Desired Other Assets"), price and terms, that are being proposed by the Potential Bidder, as applicable, (the "Marked Purchase Agreement");

b. Confirm that the offer shall remain open and irrevocable until the closing of a Sale(s) of the Desired Other Assets to the Successful Purchaser(s) or the Next Highest Bidder(s) (as defined herein);

c. Enclose a copy of the proposed Marked Purchase Agreement;

d. The Marked Purchase Agreement must specifically identify the Other Assets proposed to be purchased;

e. Contain a list of the Debtors' executory contracts and unexpired leases of which the Potential Bidder seeks assignment from the Debtors;

f. The Marked Purchase Agreement must provide that the Potential Bidder will pay all cure costs associated with the executory contracts and unexpired leases identified for assumption and assignment to the bidder;

g. Be accompanied by a wire transfer in an amount not less than 20% of the Potential Bidder's proposed purchase price as a minimum good faith deposit (the "Minimum Deposit"), which Minimum Deposit shall be used to fund a portion of the purchase price provided for in the bid;

h. Provide that the Sale of the Desired Other Assets to be purchased by the Potential Bidder shall close no later than a date that is 60 days after the Petition Date, unless otherwise agreed to and extended by the Debtors and the Potential Bidder.

i. Not be conditioned on obtaining financing or the outcome of any due diligence by the Potential Bidder; and

j. Fully disclose the identity of each entity (including financial sponsor(s)) that will be bidding for the Desired Other Assets or otherwise participating in connection with such bid, and the complete terms of any such participation.

21.    A bid received from a Potential Bidder and that meets the requirements set forth above will be considered a "Qualified Bid" and the Potential Bidder shall be a "Qualified Bidder" if the Debtors, after consultation with the Committee and the DIP Lenders, believe that such bid would be consummated if selected as the Successful Bid (as defined herein) for the Desired Other Assets.

22.    After the Other Assets Bid Deadline, the Debtors, in consultation with the Committee and the DIP Lenders, shall determine which Qualified Bid(s) represents the then-highest or otherwise best bid (the "Initial Bid") for each Other Asset.    Prior to the commencement of the Other Assets Auction, the Debtors shall distribute copies of the Initial Bid(s) to each Qualified Bidder bidding on such assets.

**Other Assets Auction**

23.    If the Debtors receive more than one Qualified Bid, an Other Assets Auction with respect to the Sale(s) will take place on [May 30, 2012 at _____ (prevailing Eastern Time)] (the "Other Assets Auction Date") at the offices of Pepper Hamilton LLP,

-9-

Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, DE 19801, or such later time and place as the Debtors may provide so long as such change is communicated reasonably in advance by the Debtors to all Qualified Bidders, the Committee, the DIP Lenders and other invitees. With respect to the Sale(s), if the Debtors do not receive any Qualified Bids for the Other Assets, the Other Assets Auction will be deemed cancelled. If the Debtors receive only one Qualified Bid with respect to either an individual Other Assets or all of the Other Assets, the Other Assets Auction with respect to such individual Other Assets or all of the Other Assets, as the case may be, will be deemed canceled and such Qualified Bid will be deemed the Successful Bid for the applicable Other Assets, and the Debtors will seek authority from the Bankruptcy Court to consummate the Sale(s).

24.     If an Other Assets Auction is held, the following rules for its conduct (the "Other Assets Auction Rules") shall be observed:

    a.  The Debtors shall have the right to modify, in consultation with the Committee and the DIP Lenders, the Other Assets Auction Rules and Other Assets Sale Procedures to promote the greatest recovery to the Debtors' estates.

    b.  Only a Qualified Bidder who has submitted a Qualified Bid by the Other Assets Bid Deadline will be eligible to participate at the Other Assets Auction.

    c.  At the Other Assets Auction, Qualified Bidders will be permitted to increase their bids. The bidding at the Other Assets Auction shall start at the purchase price stated in the Initial Bid and then continue in increments as determined by the Debtors, in consultation with the Committee and the DIP Lenders, and announced at the commencement of the Other Assets Auction; provided, however, all subsequent bids thereafter shall be at least $50,000 in excess of the prior bid.

    d.  Each Qualified Bidder will be permitted a fair, but limited, amount of time to respond to the previous bid at the Other Assets Auction. Bidding at the Other Assets Auction will continue until such time as the highest or otherwise best offer is determined in accordance with these Other Assets Sale Procedures.

e. Immediately prior to concluding the Other Assets Auction, the Debtors shall, with respect to each Other Asset, and in consultation with the Committee and the DIP Lenders, (a) review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the Sale process and the best interests of the Debtors' estates and creditors; (b) determine and identify the highest or otherwise best Qualified Bid (the "Successful Bid") and the Qualified Bidder submitting such bid (the "Successful Purchaser"); (c) determine and identify the next highest or otherwise best Qualified Bid after the Successful Bid (the "Next Highest Bid") and the Qualified Bidder submitting such bid (the "Next Highest Bidder"); and (d) have the right to reject any and all bids.

f. Within [three business days] of the completion of the Other Assets Auction, the Successful Purchaser shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

## Acceptance of the Successful Bid(s)

25.     The Debtors will present the results of the Other Assets Auction to the Bankruptcy Court at the Other Assets Sale Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Other Assets Auction, including, among other things, that (i) the Other Assets Auction was conducted and the Successful Purchaser(s) was selected in accordance with these Other Assets Sale Procedures, (ii) the Other Assets Auction was fair in substance and procedure, and (iii) consummation of the Sale(s) contemplated by the Successful Bid(s) will provide the highest or otherwise best value for the Other Assets and is in the best interests of the Debtors and their creditors.

26.     If an Other Assets Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid at the Other Assets Auction and (ii) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and the

#16036252 v6

entry of an order approving such Successful Bid.  The Next Highest Bid remains binding until the Closing of the Sale.

### Other Assets Sale Hearing

27.    A hearing to consider approval of the Sale to the Successful Purchaser(s) will take place on a date set by the Court in the Other Assets Sale Procedures Order (prevailing Eastern Time) ("Other Assets Sale Hearing").

28.    If (i) an Other Assets Auction is held, (ii) a Successful Purchaser(s) and Next Highest Bidder(s) are selected, (iii) the Bankruptcy Court approves the Sale(s) to the Successful Purchaser(s), and (iv) the Sale(s) to such Successful Purchaser(s) is not consummated because of a breach or failure to perform on the part of any such Successful Purchaser(s), then the Debtors shall be authorized to consummate the Sale(s) with the applicable Next Highest Bidder(s) without further court order or notice to any other party (other than counsel to the Committee and counsel to the DIP Lenders).

### Return of Minimum Deposit

29.    Except as otherwise provided in this paragraph with respect to any Successful Bid and any Next Highest Bid, the Minimum Deposits of all Qualified Bidders submitted pursuant to the Other Assets Sale Procedures shall be returned upon or within one (1) business day after the entry of the Other Assets Sale Order.  The Minimum Deposit of the Successful Purchaser(s) shall be held until the closing of the applicable Sale and applied in accordance with the Successful Bid(s).  The Minimum Deposit of the Next Highest Bidder(s) shall be returned upon or within three (3) business days after Closing of the applicable Sale to the Successful Purchaser(s).  If the Successful Purchaser(s) or next Highest Bidder(s), as the case may be, fails to close on the applicable Sale, such party's Minimum Deposit shall be forfeited to the Debtors.

#16036252 v6

**Reservation of Rights**

30.    The Debtors reserve the right as they may reasonably determine to be in the best interests of their estates, in consultation with the Committee and the DIP Lenders, to: (i) determine which bidders are Potential Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Other Assets Sale Procedures, the Other Assets Sale Procedures Order or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) waive terms and conditions set forth herein with respect to all potential bidders; (vi) impose additional terms and conditions with respect to all potential bidders; (vii) extend the deadlines set forth herein, but only with prior written consent of the DIP Lenders, which consent shall not be unreasonably withheld or delayed; (viii) waive or modify any of the Other Assets Auction Rules in order to maximize the value of the assets being sold; (ix) modify the Other Assets Auction and Other Assets Sale Procedures to promote the greatest recovery to the Debtors' estates in a manner not materially inconsistent with the Other Assets Sale Procedures Order; (x) adjourn or cancel the Other Assets Auction and/or Other Assets Sale Hearing in open court without further notice; and (xi) modify the Other Assets Sale Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice; provided, however, that notwithstanding the foregoing reservation of rights, the Debtors shall not modify the Other Assets Sale Procedures in a manner to alter sale procedures (e.g., minimum overbid, etc.) approved by this Court.

#16036252 v6

**D.**     **Assumption and Assignment of Executory Contacts**

31.     In connection with the Sale(s), the Debtors will seek to assume, assign, and/or transfer to the ultimate purchasers of the Other Assets certain executory contracts and unexpired leases (the "Unexpired Contracts and Leases").   In connection with the proposed assumption, assignment, and/or transfer of the Executory Contracts and Leases, the Debtors will prepare a schedule of the Executory Contracts and Leases that they believe they may assume, assign and/or transfer in a Sale or Sales of the Other Assets, as well as the amounts that the Debtors believe are necessary to cure any default under such agreements pursuant to section 365 of the Bankruptcy Code (the "Cure Amounts").

32.     [No later than May 11, 2012] the Debtors will serve on each of the counterparties to the Executory Contracts and Leases a notice (the "Assumed Contract Notice") identifying the Executory Contracts and Leases proposed to be assumed and the proposed Cure Amounts.   The Debtors propose that if any counterparties to an Executory Contract or Lease wish to object to a proposed Cure Amount ("Cure Amount Objection") they must do so on or prior to 4:00 p.m. (prevailing Eastern Time) on [May 22, 2012] (the "Cure Amount Objection Deadline"), and such Cure Amount Objection must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801 by the Cure Amount Objection Deadline, and (d) be served by first class mail, overnight mail or courier so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon (i) counsel to the Debtors, Wyrick Robbins Yates & Ponton LLP, 4101 Lake Boone Trail, Suite 300, Raleigh, NC 27607, Attn: Larry E. Robbins and Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, Wilmington, DE  19801, Attn: David B. Stratton; (ii) the

Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn.: David L. Buchbinder; (iii) counsel to the DIP Lenders, UniCredit Bank AG, (a) Mayer Brown·LLP, 1675 Broadway, New York, New York  10019-5820, Attn: Howard S. Beltzer, and (b) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn.: Mark D. Collins; (iv) counsel to the Capital Bank, (a) Poyner Spruill LLP, 301 Fayetteville Street, Suite 1900, Raleigh, North Carolina  27601, Attn: Lisa P. Sumner, and (b) Poyner Spruill LLP, 301 S. College Street, Suite 2300, Charlotte, North Carolina 28202, Attn: Timothy W. Griffin; (v) counsel to Bank of America, N.A., Moore & Van Allen PLLC, 100 North Tryon Street, Suite 4700, Charlotte, North Carolina 28202-4003, Attn: Stephen E. Gruendel; and (vi) counsel to the Committee (collectively, the "Objection Notice Parties").

33.     Unless the non-debtor party to a Contract listed in the Assumed Contract Notice files a Cure Amount Objection on or before the Cure Amount Objection Deadline, such non-debtor party shall (i) be forever barred from objecting to the Cure Amount, which such Cure Amount shall be deemed final and conclusive, (ii) be forever barred from asserting any additional cure or other amounts with respect to such Executory Contract or Lease and the Debtors shall be entitled to rely solely upon the Cure Amount, and (iii) be forever barred and estopped from asserting or claiming that any additional amounts are due.

34.     If an Executory Contract and Lease is included in any Successful Bid or Next Highest Bid, the Debtors shall within one business day after the conclusion of the Other Assets Auction, file with the Bankruptcy Court a notice (the "Assignment Contract Notice") identifying the Successful Purchaser(s) and/or Next Highest Bidder(s) and the Executory Contracts and Leases that such Successful Purchaser(s) and/or Next Highest Bidder(s) will seek to take assignment from Debtors upon the Closing of the Sale(s).  The Debtors shall serve such

-15-

the Assignment Contract Notice by first class mail, overnight courier or facsimile to the non-Debtor parties to such Executory Contracts and Leases.

35.     The Debtors propose that if any counterparty to an Executory Contract or Lease wishes to object to the potential assignment of the applicable Executory Contract or Lease (an "Assignment Objection") solely on the issue of whether the Successful Purchaser(s) or Next Highest Bidder(s) can provide adequate assurance of future performance as required by Section 365 of the Bankruptcy Code, they must do so on or prior to 4:00 p.m. (prevailing Eastern Time) on [June 5, 2012] (the "Assignment Objection Deadline") and such Assignment Objection must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801 by the Assignment Objection Deadline, and (d) be served by first class mail, overnight mail or courier so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon the Objection Notice Parties, the Successful Purchaser(s) or Next Highest Bidder(s).  All Assignment Objections must include objections to assumption and assignment on all grounds.  Unless the non-debtor party to an Executory Contract or Lease listed in the Assignment Contract Notice files an objection on or before the Assignment Objection Deadline, such non-debtor party shall be deemed to have consented to the assumption and assignment of such Executory Contract or Lease and shall be forever barred and estopped from asserting or claiming that any additional conditions to assumption and assignment must be satisfied under such Executory Contract or Lease.

36.     If the objecting non-bankruptcy party and the Debtors are not able to resolve such party's Cure Amount Objection or Assignment Objection prior to the Other Assets Sale Hearing, the Debtors will seek resolution of the matter at or before the Other Assets Sale

#16036252 v6

Hearing. If the Bankruptcy Court determines that the cure amount required to assume and assign an Executory Contract or Lease exceeds the Cure Amount stated in the Assumed Contract Notice with respect to such Executory Contract or Lease, the applicable Successful Purchaser and/or Next Highest Bidder may elect not to take an assignment of such Executory Contract or Lease.

37.    On the Closing of the Sale(s) of the Other Assets(s), and pursuant to the Other Assets Sale Order (as it shall have become a Final Order), any other Final Order of the Bankruptcy Court and/or the consent of the applicable counterparties to the extent necessary to effect the assignment pursuant to section 365 of the Bankruptcy Code, each applicable Debtor shall assume and assign to the Successful Purchaser(s) or Next Highest Bidder(s), as the case may be, and the Successful Purchaser(s) or Next Highest Bidder(s), as the case may be, shall assume from each applicable Debtor, the Assumed Contracts with respect to the applicable Other Assets(s) being purchased.

### Final List of Assumed Contracts

38.    The Debtors shall promptly file with the Bankruptcy Court a complete and final list of the Assumed Contracts.

**E.    Expedited Consideration of Stalking Horse Protections**

39.    Through this Motion, the Debtors are not currently seeking the approval of bidding protections for any potential bidder, as the Debtors do no currently have an established bidder for any of the Other Assets. However, the Debtors anticipate the possibility that granting "stalking horse" protections may become necessary as the Debtors move forward with the marketing process.

40.    In order to allow the Debtors to seek approval of bidding protections the Debtors determine to be necessary to obtain a stalking horse bidder without compromising the

Sale timelines set forth herein, the Debtors hereby request that the Court shorten the applicable notice provisions and schedule a hearing for [_____, 2012 at _____] (the "Bid Protections Hearing") so that the Court may consider whether to grant bidding protections to any potential stalking horse bidder(s) that are proposed by the Debtors by separate motion filed on or before [_____, 2012] (the "Bid Protections Motion"). The debtors further request that objections (each a "Bid Protections Objection") to the Bid Protections Motion be filed on or before 4:00 p.m. (prevailing Eastern Time) on [_____, 2012], and such Bid Protections Objection must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) be filed with the clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801; and (d) be served by first class mail, overnight mail or courier so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon the Objection Notice Parties and the potential stalking horse bidder(s) .

## F.    **Notice**

41.    To ensure that adequate notice of the Sale(s) is provided, Debtors seek approval of the Other Assets Sale Notice attached to the Other Assets Sale Procedures Order as **Exhibit 2**.

42.    [Within one (1) business day] following entry of the Other Assets Sale Procedures Order, the Debtors will serve copies of the Other Assets Sale Notice via first class mail upon: (i) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: David L. Buchbinder; (ii) counsel to the Official Committee of Unsecured Creditors, to the extent one has been formed; (iii) the Debtor's thirty (30) largest creditors; (iv) counsel to the DIP Lenders, UniCredit Bank AG, (a) Mayer

Brown LLP, 1675 Broadway, New York, New York 10019-5820, Attn: Howard S. Beltzer, and

(b) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn.: Mark D.

Collins; (v) counsel to the Capital Bank, (a) Poyner Spruill LLP, 301 Fayetteville Street, Suite

1900, Raleigh, North Carolina 27601, Attn: Lisa P. Sumner, and (b) Poyner Spruill LLP, 301 S.

College Street, Suite 2300, Charlotte, North Carolina 28202, Attn: Timothy W. Griffin; (vi)

counsel to Bank of America, N.A., Moore & Van Allen PLLC, 100 North Tryon Street, Suite

4700, Charlotte, North Carolina 28202-4003, Attn: Stephen E. Gruendel; (vii) all entities known

to have expressed an interest in a transaction with respect to the Other Assets or that have been

identified by Debtors or their advisors as a potential purchaser of the Other Assets; (viii) all

counterparties to any executory contracts or leases; (ix) all creditors and parties in interest with a

claim against or in respect of, or lien upon, the Other Assets; (x) each affected Governmental

Body, including the Internal Revenue Service; (xi) all parties asserting a security interest in the

assets of the Debtors to the extent reasonably known to the Debtors; (xii) all parties (or counsel

therefor), if any, who are known to claim interests in any executory contracts or leases; (xiii) all

parties that have filed and not withdrawn requests for notices pursuant to Bankruptcy Rule 2002

and (xiv) to the extent not included above, all parties on the Debtors' creditor matrix (the "Notice

Parties").

      43.    To ensure that adequate notice of the proposed assumption and assignment

of the Assumed Contracts is provided, Debtors seek approval of the Assumed Contract Notice.

The Assumed Contract Notice will be served in accordance with the procedures set forth above.

      44.    The Debtors submit that the foregoing notices provide the recipients with

ample notice of the relief requested, the relative impact that such relief may have on the

recipient, and the procedures that a recipient must follow if such recipient wishes to respond,

participate in the Other Assets Auction, or otherwise object to the relief requested, as the case may be.

**<center>Basis for Relief</center>**

**A.      The Sale is Within the Debtors' Sound Business Judgment**

45.      Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A debtor in possession is given these rights by section 1107(a) of the Bankruptcy Code.  See 11 U.S.C. § 1107(a).  Moreover, section 105(a) of the Bankruptcy Code provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

46.      A sale of a debtor's Other Assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business justification exists for the sale.  Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); Comm. of Equity Sec. Holders v. Lionel Corp (In re Lionel Corp., 722 F.2d 1063, 1071-72 (2d Cir. 1983).  In considering a debtor's business decision, the court does not act as an arbiter of disputes between creditors and the estate, but rather as an "overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee or debtor-in-possession." Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993).

47.      Courts have applied various factors in determining whether a sound business justification exists, including that: "(1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the

<center>-20-</center>

purchaser has acted in good faith." In re Decora Indus., Inc., 2002 WL 32332749 at *2 (D. Del. 2002); see In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (Bankr. D. Del. 1991).

48.     There can be no question that the proposed Sale of the Other Assets pursuant to the Purchase Agreement (as may be modified at the Other Assets Auction) is supported by sound business justifications. The Debtors' business is losing money daily, and the Debtors are surviving on advances from Unicredit Bank AG. In the meantime, the risk that the parties with whom the Debtors do business and the Debtors' customers could terminate their relationship with the Debtors increases daily. The Debtors have already sought approval of procedures to sell the Purchased Assets through the Purchased Assets Auction, and the Other Assets represent the Debtors' remaining Assets. The Debtors firmly believe the only way that creditors will receive value is through a prompt sale of both the Purchased Assets and the Other Assets. The continued operations of the Debtors' business is not an option. The Debtors believe that a prompt sale is essential to maximize the value of the Other Assets for the estate.

**(i)     Sound Business Reasons Exist for the Sale
          and the Consideration Offered is Fair and Reasonable**

49.     The Debtors have concluded that a prompt sale of the Other Assets will best maximize value. A Sale or Sales according to the proposed Other Assets Sale Procedures will enable the Debtors to obtain the highest and best offers for the Other Assets and maximize the value of the Other Assets for the estates.

50.     Pursuant to the proposed Other Assets Sale Procedures, the Debtors will market the Other Assets up to and during the Other Assets Auction, ensuring that the Debtors will receive the highest and best offer for them. Accordingly, the Debtors submit that the Sale or Sales will provide fair and reasonable consideration.

#16036252 v6

**(ii)    The Debtors Have Presented the Proposed Sale in Good Faith**

51.    The Debtors have fully disclosed and requested the Court's approval of all of the terms and conditions of the proposed sale and intend to provide notice as directed by the Court. Furthermore, the Debtors will be prepared to introduce evidence at the Other Assets Sale Hearing regarding the conduct of the Other Assets Auction and the arms length nature of the negotiation of the Purchase Agreement with the Successful Purchaser and Next Highest Bidder. Accordingly, the Sale to the Successful Purchaser or Next Highest Bidder has been proposed, and is, in good faith.

**(iii)    Adequate Notice of the Sale is Being Provided**

52.    In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private sale or by public auction. Further, pursuant to Bankruptcy Rule 2002, twenty-one days notice by mail is sufficient notice of the proposed use, sale, or lease of property of the estate other than in the ordinary course of business. Subject to Bankruptcy Rule 6004, the notice of a proposed use, sale, or lease of property required under Bankruptcy Rule 2002(a)(2) must include the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections. See Fed. R. Bankr. P. 2002(c)(1). Moreover, the notice of a proposed use, sale, or lease of property is sufficient if it generally describes the property. Id.

53.    The Debtors respectfully submit that the notice, procedures, and rules set forth in the Motion satisfy the notice requirements of the Bankruptcy Rules and section 363(b) of the Bankruptcy Code and constitute good and sufficient notice, and that no other or further notice is required.

**B.    Assumption and Assignment of Executory Contracts**

54.    The Debtors also seek authority to assume and assign the Assumed Contracts to the applicable Successful Purchaser(s).  Under section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Section 365(f)(2), however, provides that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if –
>
> > (A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and
> >
> > (B)    adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

55.    Section 365(b)(1) in turn codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing:

> (b) (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
> > (A)    cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
> >
> > (B)    compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C)    provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

56.    The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.),

139 B.R. 585, 592 (S.D.N.Y. 1992); In re Prime Motor Inns, Inc., 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994) ("the degree of assurance necessary falls considerably short of an absolute guaranty"); Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

57.     Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. See, e.g., In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

58.     The Debtors will adduce facts at the Other Assets Sale Hearing to show that all determined defaults under the Assumed Contracts will promptly be cured, thus providing adequate assurance pursuant to section 365(b)(1)(B). The Debtors will also demonstrate the financial wherewithal of the Successful Purchaser(s) and its/their willingness and ability to perform under the contracts to be assumed and assigned. The Other Assets Sale Hearing will therefore provide the Court and the other interested parties the opportunity to evaluate and, if necessary, challenge the ability of the Successful Purchaser(s) to provide adequate assurance of future performance under the contracts to be assumed, as required under section 365(b)(1)(C). The Court should therefore authorize the Debtors to assume and assign the contracts as set forth herein.

**D.    Authorization for Sale Free and Clear of
Liens, Claims, Encumbrances, and Interests**

59.     Section 363(f) of the Bankruptcy Code provides that a debtor may sell property "free and clear of any interest in such property of an entity other than the estate, only if

a)      applicable non-bankruptcy law permits sale of such property free and clear of such interest;

b)      such entity consents;

c)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

d)      such interest is in bona fide dispute; or

e)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); see In re Kellstrom Industries, Inc., 282 B.R. 787, 793 (Bankr. D. Del. 2002) (noting that since section 363(f) is written in the disjunctive, the court may approve a sale free and clear if any one subsection is met). The Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f) with respect to any party asserting an interest in the Other Assets. Specifically, the Debtors propose that any liens, claims, or encumbrances asserted against the Other Assets be transferred to any proceeds realized from the sale of such assets, in compliance with any interim or final cash collateral or debtor in possession financing orders entered in these cases. Accordingly, a sale free and clear of liens, claims, and interests is permitted under section 363(f).

## Notice

60.     No trustee, examiner, or creditors' committee has been appointed in the Debtors' chapter 11 cases.

61.     Notice of this Motion has been provided via first class mail to (i) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn.: David L. Buchbinder; (ii) the Committee; (iii) the Debtor's thirty (30) largest creditors; (iv) counsel to the DIP Lenders, UniCredit Bank AG, (a) Mayer Brown LLP, 1675 Broadway, New York, New York  10019-5820, Attn: Howard S. Beltzer, and

(b) Richards, Layton & Finger, P.A., 920 King Street, Wilmington, DE 19801, Attn.: Mark D. Collins; (v) counsel to the Capital Bank, (a) Poyner Spruill LLP, 301 Fayetteville Street, Suite 1900, Raleigh, North Carolina 27601, Attn: Lisa P. Sumner, and (b) Poyner Spruill LLP, 301 S. College Street, Suite 2300, Charlotte, North Carolina 28202, Attn: Timothy W. Griffin; (vi) counsel to Bank of America, N.A., Moore & Van Allen PLLC, 100 North Tryon Street, Suite 4700, Charlotte, North Carolina 28202-4003, Attn: Stephen E. Gruendel; (vii) all entities known to have expressed an interest in a transaction with respect to the Other Assets or that have been identified by Debtors or their advisors as a potential purchaser of the Other Assets; (viii) all parties that have filed and not withdrawn requests for notices pursuant to Bankruptcy Rule 2002; (ix) all state Attorneys General; and (x) certain property manager ("Core Notice Parties"). In light of the nature of the relief requested, the Debtors submit that no other or further notice need be provided.

62. As provided in Bankruptcy Rule 6004(h) and 6006(d), the order establishing Other Assets Sale Procedures shall not be stayed after entry by the Court and shall be effective and enforceable immediately upon entry by the Court.

### No Prior Request

63. The Debtors have not previously sought the relief requested herein from this or any other court.

WHEREFORE, the Debtors respectfully request that the Court (A) enter, substantially in the form annexed hereto as **Exhibit A**, the Other Assets Sale Procedures Order, (i) establishing the Other Assets Sale Procedures, substantially in the form annexed as Exhibit 1 to the Other Assets Sale Procedures Order; (ii) scheduling the Other Assets Sale Hearing on and setting objection and bidding deadlines with respect to the Sale(s); (iii) directing that notice of

#16036252 v6

the Other Assets Sale Procedures and the Other Assets Sale be given, substantially in the form annexed as Exhibit 2 to the Other Assets Sale Procedures Order; and (iv) granting related relief; and (B) enter, substantially in the form annexed hereto as **Exhibit B,** the Other Assets Sale Order, (i) authorizing the Sale or Sales of the Other Assets free and clear of liens, claims, encumbrances, and other interests pursuant to the terms of the Purchase Agreement, substantially in the form attached hereto as **Exhibit C,** to the Successful Purchaser(s) or Next Highest Bidder, as the case may be; (ii) approving the assumption and assignment of executory contracts and unexpired leases, as necessary in connection with the Sale; and (ii) granting related relief.

Dated:  May 4, 2012
       Wilmington, Delaware

Respectfully submitted,

PEPPER HAMILTON LLP


  /s/ James C. Carignan
David B. Stratton (DE No. 960)
David M. Fournier (DE No. 2812)
James C. Carignan (DE No. 4230)
John H. Schanne II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390

*Proposed Attorneys for the Debtors and Debtors in Possession*

#16036252 v6