IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> CAPITOL INFRASTRUCTURE, LLC, <u>et al</u>.,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 12-11362-KG <br><br> (Jointly Administered) <br><br> Hearing Date: 6/14/12 10:00 a.m. <br> Objection Deadline: 6/7/12 4:00 p.m.[2] |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR <u>OF LIENS, CLAIMS AND ENCUMBRANCES</u>**

The above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>"), by and through their undersigned counsel, hereby file this motion (the "<u>Motion</u>") for the entry of an order authorizing the sale of certain of the Debtors' assets, as more particularly listed on **Exhibit A** hereto (the "<u>Assets</u>"), free and clear of liens, claims and encumbrances. In support hereof, the Debtors state as follows:

**JURISDICTION AND VENUE**

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): Accelera Services, LLC (6589); Amenity Broadband, LLC (7012); BA Infrastructure SPE, LLC (6610); Baldwin County Internet/DSSI Service, L.L.C. (8858); Broadstar, LLC (8917); Capitol Broadband Development Company, LLC (4515); Capitol Broadband Management Corporation (4260); Capitol Broadband Ventures, LLC (3976); Capitol Infrastructure, LLC (0323); Capitol Infrastructure CP Funding, LLC (1008); CB Infrastructure SPE, LLC (4470); Infrastructure SPE, LLC (1144); and SMARTRESORT CO., L.L.C. (3706). The Debtors' corporate headquarters is located at 111 Corning Road, Suite 250, Cary, NC 27518.

[2] The hearing date and objection deadline listed herein are subject to Court approval pursuant to the Debtors' Motion to Shorten Notice filed contemporaneously herewith.

2. The bases for the relief requested herein are section 363 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.* as amended, the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On April 26, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[3]

4. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. No trustee, examiner, creditors' committee, or other official committee has been appointed in the Debtors' chapter 11 cases.

6. A description of the Debtors' business, capital structure, and the circumstances leading to the chapter 11 filings is set forth in the Declaration of Glen D. Lang in Support of Chapter 11 Petitions and First Day Motions (the "Lang Declaration") (D.I. 4).

7. On May 4, 2012, the Debtors filed their Motion for Order Authorizing the Debtors to Reject Executory Contracts and Abandon Certain Equipment (the "Rejection Motion") (D.I. 81). On May 16, 2012, the Court entered the Order Granting the Rejection Motion (the "Rejection Order") (D.I. 270).

8. The Debtors maintain certain pieces of personal property (the "Equipment") on or near the properties associated with the contracts rejected under the Rejection Order, including

---

[3] Debtor Capitol Broadband Management Corporation filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 28, 2012.

circuits, switches, head end devices, monitoring equipment, infrastructure, and so forth. Although the contracts rejected pursuant to the Rejection Order were a drain on estate resources, certain of the Equipment has value and may be beneficial to the Debtors' estates.

9. On May 16, 2012, the Debtors filed with the Court and served on affected property owners a list of the specific Equipment they may be removing from various properties (the "Equipment Removal Notice"). The Debtors have exercised their business judgment and determined that the collection, marketing and sale of that Equipment, which comprises the Assets listed on Exhibit A hereto, will maximize recoveries for the Debtors' estates.

10. Concurrently herewith, the Debtors have filed their Application (the "Apto Application") (D.I. 382) for Entry of an Order Authorizing the Retention of Apto Solutions, Inc. ("Apto") in Connection with the Recover and Remarketing of the Assets, pursuant to which the Debtors seek to retain Apto on the terms set forth in the Remarketing and Services Agreement (the "Apto Agreement") to market, recover and sell the Assets on behalf of the Debtors' estates.[4]

**RELIEF REQUESTED**

11. By this Motion, the Debtors seek the entry of an order authorizing sale of the Assets (the "Assets Sale") free and clear of liens, claims and encumbrances, with any liens to attach to the Debtor Parties' Portion of the Net Sale Proceeds with the same validity, extent and priority as may currently exist with respect to the particular Asset sold.

12. With respect to Assets on which a Lender Party holds a properly perfected lien ("Liened Assets") such Liened Assets will be left on Exhibit B to the Apto Agreement and sold

---

[4] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Apto Agreement.

by Apto only if the applicable Lender Party consents, prior to the objection deadline on the Application, to the sale of the Liened Assets by Apto pursuant to the Apto Application and the Sale Motion.  If the applicable Lender Party does not so consent, the Debtors intend to remove the affected Liened Assets from Exhibit A hereto and from Exhibit B to the Apto Agreement (which removal will be evidenced by the Debtors' filing with the Court of revised exhibits), with the expectation that the interest of the applicable Debtor's estate in such affected Liened Assets ultimately will be abandoned pursuant to the terms of the Rejection Order or various stipulations approved by the Court.

13.   Exhibit A hereto identifies which Debtor Party owns a particular Asset.  Bank of America, N.A. holds liens on the Assets owned by BA Infrastructure SPE, LLC, as reflected on Exhibit B to the Apto Agreement to secure obligations in excess of $13.7 million.  Capital Bank holds liens on the Assets owned by CB Infrastructure SPE, LLC, as reflected on Exhibit A hereto, to secure obligations in excess of $15 million.  Unicredit Bank AG, New York Branch ("Unicredit"), holds liens on the Assets owned by Infrastructure SPE, LLC and Capital Infrastructure, LLC, as reflected on Exhibit A hereto, to secure the Debtors' obligations under the debtor in possession financing facility in these cases.  The aggregate original cost of the Assets was approximately $6.1 million, though the Debtors believe that the current market value of the Assets, while material in the aggregate, is substantially less.  Because the Assets are fully encumbered by the various Lender Parties' liens, the Debtors are engaged in discussions with the Lender Parties regarding a reasonable carve-out from the net proceeds of the Asset sales proposed herein for the benefit of the Debtors' estates, and will amend this Motion and/or Exhibit A hereto as appropriate to reflect the outcome of those discussions.

14. If a notice of dispute regarding the Debtors' authority to remove any particular Asset has been timely filed in accordance with the Rejection Order by an entity with an interest in the Asset, the Debtors (or Apto acting on behalf of the Debtors) will not remove such disputed Asset until such dispute is resolved by the parties or this Court. *See Rejection Order*, ¶¶ 8-9. If the parties are unable to resolve such dispute, the Rejection Order calls for a hearing to be held before the Court on June 14, 2012 or such other date as the Court may direct.

A. **Section 363 Sale of the Assets**

15. Section 363(b) of the Bankruptcy Code authorizes a debtor to sell assets outside of the ordinary course of business. As a general rule, a debtor must show that the following elements have been met before a section 363(b) sale may be approved: (1) that a sound business reason exists for the proposed transaction; (2) the sale has been proposed in good faith; (3) the sale price is fair and reasonable; and (4) that accurate and reasonable notice has been provided for the transaction. *In re Stroud Ford. Inc.*, 163 B.R. 730 (Bankr. M.D. Pa. 1993). Here, each factor militates in favor of approval of the Assets Sale.

16. Courts have made it clear that a debtor's showing of a sound business justification requires a debtor "to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 898, 906 (Bankr. S.D. Ohio 1984). Whether there are sufficient business reasons to justify a sale depends on the facts and circumstances of each case. *In re Industrial Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15 (Bankr. E.D. Pa. 1987).

17. A sound business reason exists here. The Assets must be sold or removed from the rejected premises lest they be deemed abandoned pursuant to the Rejection Order, and the proposed Assets Sale will maximize recoveries for the Debtors' estates. The Debtors have

determined that creditors will receive more value through the Assets Sale, as conducted by Apto, than through efforts to sell the Assets through other methods because of the diverse location of the Assets and the difficulties entailed in selling the Assets in a less cohesive manner.

18.     The Debtors believe that the proposed Assets Sale will realize the most funds for a distribution to creditors of the estates.  The proposed Assets Sale is therefore justified by sound business reasons and is necessary to maximize the return to creditors in these cases.

19.     The Assets Sale is proposed by the Debtors in good faith.  Moreover, pursuant to the Apto Agreement, Apto has agreed to collect and market the Assets and to sell each item of the Assets for the highest price reasonably available for such item on an "as is" basis.  Thus, the Debtors believe that the Assets Sale will result in a sale price for each respective Asset that will maximize recovery for the estates.

20.     Finally, service of this Motion and the previous service of the Equipment Removal Notice has provided reasonable notice under the circumstances.

21.     Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under … this section free and clear of any interest in such property of an entity other than the estate … if …. such entity consents ….

11U.S.C. §363(f)(2).

22.     Apart from the Lender Parties, the Debtors are not aware of any other parties holding liens on the Assets.  Furthermore, any other parties that assert an interest in the Assets and dispute the Debtors' right to remove the Assets may file a timely Notice of Dispute, which will halt the removal of such disputed Assets until such dispute is resolved by the parties or this Court.

-6-

23. The Debtors submit that the Assets Sale satisfies the statutory requirements of section 363(f) and that such Assets Sale should be free and clear of liens, claims and encumbrances as set forth herein.

**B.    Request for Waiver of Fourteen-Day Stay Pursuant to Fed. R. Bankr. P. 6004(h)**

24. Because efforts with respect to the Assets Sale will proceed contemporaneously with the entry of an order approving this Motion, and must occur quickly to maximize value, the Debtors respectfully request that the order granting the Motion be effective immediately upon entry and that the fourteen-day stay of Bankruptcy Rule 6004(h) be waived.

WHEREFORE, the Debtors respectfully request that this Court enter an order, (i) authorizing the Assets Sale free and clear of all liens, claims and encumbrances as set forth herein; (ii) waiving the fourteen-day period of Bankruptcy Rule 6004(h); and (ii) granting such other and further relief as is just and proper.

Dated: May 25, 2012
      Wilmington, Delaware

Respectfully submitted,

PEPPER HAMILTON LLP

/s/ John H. Schanne II
David B. Stratton (DE No. 960)
David M. Fournier (DE No. 2812)
James C. Carignan (DE No. 4230)
John H. Schanne II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390

*Proposed Attorneys for the Debtors and Debtors in Possession*