## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CAPITOL INFRASTRUCTURE, LLC, et al.,[1] | Case No. 12-11362 (KG) |
| Debtors. | (Jointly Administered) |
| | Related Document No.: 11 |

## ORDER (I) AUTHORIZING AND APPROVING THE SALE TO MEDIACOM SOUTHEAST LLC OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING PURCHASE AGREEMENT THERETO; (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors (the "Debtors"), for an order (the "Order") pursuant to Sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (i) authorizing, but not directing, the Debtors to sell certain of their assets (the "Purchased Assets") described in and pursuant to the terms and conditions of an executed Asset Purchase Agreement, dated as of June 13, 2012 (collectively with all exhibits thereto, the "Asset Purchase Agreement") by and between the Debtors, as sellers, and Mediacom Southeast LLC, as purchaser (including any of its affiliated assignees or designees, the "Successful Purchaser") free and clear of liens, claims, encumbrances, and other interests, of any kind or nature, including any other similar rights or remedies specified in the

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): Accelera Services, LLC (6589); Amenity Broadband, LLC (7012); BA Infrastructure SPE, LLC (6610); Baldwin County Internet/DSSI Service, L.L.C. (8858); Broadstar, LLC (8917); Capitol Broadband Development Company, LLC (4515); Capitol Broadband Management Corporation (4260); Capitol Broadband Ventures, LLC (3976); Capitol Infrastructure, LLC (0323); Capitol Infrastructure CP Funding, LLC (1008); CB Infrastructure SPE, LLC (4470); Infrastructure SPE, LLC (1144); and SmartResort Co., LLC (3706). The Debtors' corporate headquarters is located at 111 Corning Road, Suite 250, Cary, NC 27518.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Asset Purchase Agreement, but excluding only the Permitted Encumbrances, as defined in the Asset Purchase Agreement (the "Liens") and (ii) authorizing Debtors to assume and assign certain executory contracts and unexpired leases (the "Assumed Contracts") pursuant to the terms of the Asset Purchase Agreement; and this Court having entered an order dated May 15, 2012 (the "Sale Procedures Order") authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction and the Bid Procedures to consider higher and better offers for the Purchased Assets, and further approving, among other things, procedures for the assumption and assignment of certain contracts and leases (including proposed cure amounts); and the Auction having been held on June 4, 2012 pursuant to which the Successful Purchaser was selected as the winning bidder for the Purchased Assets; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, its creditors, and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; adequate notice having been given and a hearing having been held on June 14, 2012 (the "Sale Hearing"); the Court having considered the testimony, documentary evidence, offers of proof (to the extent consented to by the parties), stipulations of the parties, and the arguments of counsel; and this Court having determined that the Successful Purchaser has submitted the highest and best offer for the Purchased Assets; and good cause otherwise having been shown for the relief requested;

NOW, upon the Motion, the exhibits annexed thereto, the evidence presented at the Sale Hearing and the arguments of counsel advanced at the Sale Hearing, and all prior pleadings and proceedings made herein,

THE COURT HEREBY FINDS:

A.    The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.    This Court, pursuant to 28 U.S.C. § 1334, has jurisdiction over all assets of the Debtors and their chapter 11 estates. The Motion is a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue of the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    The Debtors solicited offers for, conducted an auction of, and selected the Successful Purchaser for the Sale of the Purchased Assets in accordance with the Sale Procedures Order. Interested parties had an opportunity to, and in fact, did submit bids for the Purchased Assets.

D.    Notice of the Auction, the Sale Hearing and the proposed assumption and assignment of the Assumed Contracts was provided in accordance with sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008, the local rules of this Court and the Sale Procedures Order. Such notice was adequate and sufficient under the particular circumstances and complied with applicable provisions of the Sale Procedures Order, the Bankruptcy Code and the Bankruptcy Rules. No other or further notice of the Motion or the relief request therein, or of the entry of this order, is necessary or shall be required. Reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested parties and entities.

E.    The Auction was fair in substance and procedure. All parties interested in bidding on the Purchased Assets received adequate notice of the Auction and sufficient information and opportunity to participate in the Auction.

F.    The Asset Purchase Agreement proposed by Successful Purchaser, was offered in

good faith, from arm's-length bargaining positions without collusion or fraud, by the parties. The Debtors and Successful Purchaser have not engaged in any conduct that would permit the Asset Purchase Agreement or the transactions provided therein to be avoided under section 363(n) of the Bankruptcy Code. The Bid Procedures set forth in the Sale Procedures Order were non-collusive, procedurally fair to all interested parties and the result of arms-length negotiations among the Debtors and parties in interest in these cases.

      G.     The Debtors and their advisers have diligently and in good faith marketed the Purchased Assets to secure the highest and best offer or offers therefor. The Debtors and their advisers afforded interested potential purchasers a full, fair, and reasonable opportunity to make a higher and better offer to purchase the Purchased Assets. The total consideration provided for in the Asset Purchase Agreement entered into with Successful Purchaser, and the transactions contemplated thereby, represent a fair and reasonable purchase price and constitute the highest and best offer obtainable for the Purchased Assets, and constitutes (a) reasonably equivalent value under the Bankruptcy Code, and (b) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or District of Columbia, for the Purchased Assets.

      H.     The offer of the Successful Purchaser is fair and reasonable and constitutes adequate consideration for the Purchased Assets. The Successful Purchaser is a buyer in good faith, as such term is used in the Bankruptcy Code. The Successful Purchaser is neither an "affiliate" nor "insider" of the Debtors as such terms are defined in the Bankruptcy Code. The Asset Purchase Agreement was negotiated and executed in good faith, following arms' length negotiations among the Successful Purchaser and the Debtors, each of whom was represented by counsel, and without collusion or fraud. None of the Debtors or the Successful Purchaser has

engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of section 363(n) of the Bankruptcy Code. Accordingly, the Successful Purchaser is a "good faith purchaser" entitled to the benefits and protections of section 363(m) of the Bankruptcy Code.

I.    The Debtors have demonstrated good, sufficient, and sound business purpose and justification and compelling circumstances for the sale of the Purchased Assets pursuant to section 363 of the Bankruptcy Code prior to, and outside of, a plan of reorganization. Such business reasons included, among others, that (i) the Asset Purchase Agreement and the consummation of the transactions contemplated thereby present the best opportunity to realize the Debtors' value on a going concern basis, and (ii) there is substantial risk that the value of the Purchased Assets will deteriorate significantly if the sale is not expedited.

J.    The Asset Purchase Agreement must be approved promptly in order to preserve the value of the Purchased Assets. The Asset Purchase Agreement presents the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets, and the Asset Purchase Agreement and the closing thereunder will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative. The sale of the Purchased Assets does not constitute a *sub rosa* Chapter 11 plan.

K.    With respect to any and all persons or entities asserting a Lien on, with respect to or in connection with the Purchased Assets, (i) applicable non-bankruptcy law permits sale of such property free and clear of such Lien; (ii) such person or entity has consented to the sale and transfer, license, and assignment as applicable, free and clear of its Liens, with such Lien to attach to the proceeds of such sale and transfer, license, and assignment, as applicable; (iii) such

-5-

Lien is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such Lien is in bona fide dispute; and/or (v) such person or entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such Lien; so that the conditions of section 363(f) of the Bankruptcy Code have been satisfied. Those holders of Liens who did not object or who withdrew their objections to the Sale Motion are deemed to have consented to the Sale Motion pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Liens who did object fall within one or more of the subsections of section 363(f) of the Bankruptcy Code.

L.    The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts to the Successful Purchaser and that the assumption and assignment of the Assumed Contracts is in the best interest of the Debtors and their chapter 11 estates. The provisions of sections 363 and 365 of the Bankruptcy Code have been complied with as they are applicable to the transfer of the Purchased Assets and the assumption and assignment of the Assumed Contracts by the Debtors to Successful Purchaser.

M.    The assumption and immediate assignment of the Assumed Contracts to Successful Purchaser is subject to all the provisions of the Asset Purchase Agreement. Each and every provision of the Assumed Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning, assignment of any of the Assumed Contracts has been satisfied, will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.

N.    The Debtors and the Successful Purchaser have demonstrated adequate assurance of future performance by the Successful Purchaser with respect to assumption and assignment of the Assumed Contracts.

O.     The Successful Purchaser will, by its performance under the Asset Purchase Agreement, (i) cure, or provide adequate assurance that it will promptly cure, all defaults under the Assumed Contracts, if any, existing before the Closing Date, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, (ii) provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default before the Closing Date under the Assumed Contracts, if any, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code and (iii) provide adequate assurance of its future performance of and under the Assumed Contracts, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

P.     Upon assignment and sale to Successful Purchaser, the Assumed Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order. Applicable law does not excuse a party to any Assumed Contract from accepting performance from or rendering performance to an entity other than the Debtor counterparty. None of the Assumed Contracts is an agreement to make a loan or extend other debt financing or financial accommodations, to or for the benefit of the Debtor counterparty. None of the Assumed Contracts was terminated under applicable non-bankruptcy law prior to the commencement of these bankruptcy cases.

Q.     The Debtors has given due and proper notice of the Motion and the relief sought therein has been given to all parties required to receive notice, and no other or further notice is required. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, and the rights of third parties to submit higher or otherwise better offers for the Purchased Assets, has been afforded to all interested parties and entities.

R.     Except with respect to liabilities expressly assumed in the Asset Purchase

#16210449 v4

Agreement, the Closing and the consummation of the transactions contemplated by the Asset Purchase Agreement shall not subject Successful Purchaser to any liability whatsoever with respect to the prepetition operation of the business of the Debtors or the postpetition operation of the business of the Debtors. The Successful Purchaser is not holding itself out to the public as a continuation of the Debtors, and no common identity of incorporators, directors, or stockholders exists between the Successful Purchaser and the Debtors.

S.      Pursuant to the Asset Purchase Agreement, Successful Purchaser is not purchasing all of the Debtors' assets. The transactions contemplated by the Asset Purchase Agreement do not amount to a consolidation, merger, or *de facto* merger of Successful Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Successful Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and Successful Purchaser, Successful Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and Successful Purchaser does not constitute a successor to the Debtors or the Debtors' estates.

T.      Upon the Closing, Successful Purchaser shall be deemed to have assumed only the liabilities expressly assumed in the Asset Purchase Agreement, and Successful Purchaser shall have no obligations with respect to any other liabilities of the Debtors. Except for those assumed liabilities, Successful Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing. Successful Purchaser's operation and use of the Purchased Assets acquired from the Debtors shall not be deemed a continuation of the Debtors' business. The Court finds that Successful Purchaser would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon

#16210449 v4

"successor liability" theories.

U.      Time is of the essence in consummating the Sale.  In order to maximize the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Asset Purchase Agreement.  Accordingly, the Court finds that there is cause to waive and/or vacate the stays imposed by Rules 6004(h) and 6006(d) of the Bankruptcy Rules, and such stays are hereby vacated and shall have no application to the relief afforded by this Order.

V.      Proper, sufficient, and sound business reasons and other good cause for the entry of this Order have been shown.   Under all the circumstances presented, (i) all actions contemplated in the Asset Purchase Agreement; (ii) consummation of all acts contemplated in this Order; (iii) the transfer of the Purchased Assets by the Debtors to Successful Purchaser; (iv) the assumption and assignment to Successful Purchaser of the Assumed Contracts; and (v) the receipt by the Debtors of the Purchase Price are in the best interests of the Debtors and their estates, creditors, and interest holders.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is hereby GRANTED as set forth herein.  All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, or settled, are hereby overruled on the merits. The Asset Purchase Agreement, an executed copy of which was filed with the Court, is approved in all respects.

2.      Notice of the Sale Hearing was adequate and sufficient under the particular circumstances and complied with applicable provisions of the Sale Procedures Order, the Bankruptcy Code and the Bankruptcy Rules.

3.      The sale of the Purchased Assets to Successful Purchaser in exchange for

#16210449 v4

the consideration specified in the Asset Purchase Agreement is (i) fair and reasonable and shall be deemed to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law, and (ii) not subject to avoidance under section 363(n) of the Bankruptcy Code or otherwise.

4.     The Debtors have not disclosed, in connection with their products or services, any policy prohibiting the transfer of personally identifiable information in connection with a merger or sale of their business within the meaning of the Bankruptcy Code. Accordingly, the sale of the Purchased Assets may be approved under section 363(b)(1)(A) of the Bankruptcy Code without the appointment of a consumer privacy ombudsman.

5.     The Debtors are hereby authorized, empowered, and directed, and, upon entry of this Order, have all the power and authority necessary to:

a.     Fully perform under, consummate, implement, execute, and deliver the Asset Purchase Agreement and all other documents contemplated thereby, to consummate the transactions contemplated by the Asset Purchase Agreement, and to take all other actions required to be taken pursuant to the Asset Purchase Agreement;

b.     Transfer the Purchased Assets to Successful Purchaser and to execute and deliver all the documents necessitated thereby, and to take any action necessary to effectuate the transfer of the Purchased Assets to Successful Purchaser;

c.     Assume and assign the Assumed Contracts to the Successful Purchaser effective upon the Closing (or such other date as may be specified by the Bankruptcy Court or this Order) and upon the terms and conditions set forth in the Asset Purchase Agreement;

d.     Receive the consideration described in the Asset Purchase

Agreement from Successful Purchaser (and from the Escrow Holder, as defined under and set forth in the Asset Purchase Agreement) and take any action necessary to effectuate the receipt of such consideration; and

       e.     Fully perform and take all action necessary to effectuate the Asset Purchase Agreement, the transactions contemplated thereby, and the obligations contemplated by this Order.

      6.     No other or further consents or approvals of this Court are required for the Debtors to consummate or effectuate (i) the Asset Purchase Agreement, (ii) the transfer of the Purchased Assets, (iii) the assumption and assignment to Successful Purchaser of the Assumed Contracts, or (iv) the receipt of consideration from Successful Purchaser.  Each of the Debtors has full power and authority to execute the Asset Purchase Agreement and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate action of the Debtors.

      7.     Pursuant to section 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to Successful Purchaser, and, upon the Closing under the Asset Purchase Agreement, all right, title and interest of the Debtors in and to the Purchased Assets shall be vested in the Successful Purchaser free and clear of any and all Liens, including, without limitation, all tax Liens other than Permitted Encumbrances and all claims, if any, arising from the operation or cessation of the Debtors' business, or based on any theory that the Successful Purchaser is a successor or continuation of the Debtors or the Purchased Assets whether arising prior to or subsequent to the commencement of the Debtors' cases under chapter 11 of the Bankruptcy Code (or any case under chapter 7 of the Bankruptcy Code that may result from the conversion of any of these chapter 11 cases), and whether imposed by agreement, understanding,

#16210449 v4

law, equity, or otherwise, which Liens, if any, shall attach to the proceeds of the sale. Except as expressly permitted by the Asset Purchase Agreement and this Order, all persons or entities holding or asserting any Liens of any kind or nature with respect to the Purchased Assets shall be, and hereby are, forever barred, estopped and permanently enjoined from asserting such Liens against Successful Purchaser, its members, affiliates, designees, officers, directors, employees, agents, successors or assigns, financial advisors, legal professionals or any of their respective properties (including the Purchased Assets) or otherwise taking any action to prevent or interfere with the consummation of the transactions contemplated by the Asset Purchase Agreement.

8.    In accordance with sections 365(b)(2) and (f) of the Bankruptcy Code, upon transfer of the Assumed Contracts to Successful Purchaser, (i) Successful Purchaser shall have all of the rights of the Debtors thereunder and each provision of such Assumed Contracts shall remain in full force and effect for the benefit of Successful Purchaser notwithstanding any provision in any such Assumed Contracts or in applicable law that prohibits, restricts or limits in any way such assignment or transfer, and (ii) the Assumed Contracts may not be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the consummation of the transactions contemplated by the Asset Purchase Agreement.

9.    Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding, against Successful Purchaser or its successors and assigns or the Purchased Assets with respect to any Lien other than Permitted Encumbrances. Without limiting the generality of the foregoing, Successful Purchaser shall have no liability for any Lien against the Debtors or their directors,

#16210449 v4

officers, or shareholders, whether such Lien is known or unknown, matured or unmatured, liquidated or unliquidated, contingent or non-contingent.

10.    Except as expressly provided in the Asset Purchase Agreement, the consummation of the Asset Purchase Agreement shall not subject Successful Purchaser to any liability whatsoever with respect to the prepetition or postpetition operation of the business of the Debtors in any form or manner whatsoever, including, without limitation, by reason of any theory of successor or transferee liability, *de facto* merger, or substantial continuity, whether known or unknown and whether asserted or unasserted as of the Closing, including without limitation for (i) any claims for returns or warranties relating to conduct of the Debtors' business by the Debtors prior to the Closing (ii) Environmental Claims (as defined in the Asset Purchase Agreement) and (iii) any claims relating to employee benefit plans.

11.    If any person or entity that has filed a financing statement or other documents or agreements evidencing a Lien on the Purchased Assets (including without limitation the DIP Lenders) shall not have delivered, in proper form for filing, termination statements, instruments of satisfaction, releases, and other documents to the Debtors prior to the Closing, then the Debtors and Successful Purchaser shall be and hereby are authorized to execute such termination statements, instruments of satisfaction, releases, and other documents on behalf of the person or entity and to file the same with any appropriate registry or public filing office. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Liens shall be self-executing, and notwithstanding the failure of Successful Purchaser, the Debtors, or any other party to execute, file, or obtain releases, termination statements, assignment consents, or other instruments to effectuate, consummate, and/or implement the provisions hereof or the Asset Purchase Agreement with

#16210449 v4

respect to the sale of the Purchased Assets and the assumption and assignment of the Assumed Contracts, all Liens on the Purchased Assets and the Assumed Contracts shall be and hereby are deemed to be divested, terminated, and discharged.

12.    This Order (i) is and shall be effective as a determination that, upon the Closing, in accordance with and as allowed by sections 105, 363 and 365 of the Bankruptcy Code, and other than Permitted Encumbrances, all liens, claims, and interests existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged, and terminated in each case as to the Purchased Assets; and (ii) is and shall be binding upon all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.  Each and every federal, state, and local governmental agency or department or office is hereby authorized and directed to accept this Order and any and all documents and instruments necessary and appropriate to consummate the transaction contemplated by the Asset Purchase Agreement.  Following the Closing, this Order may be used as and shall constitute for any and all purposes and general assignment and bill of sale transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Successful Purchaser.

13.    The Debtors are hereby authorized in accordance with section 365 of the Bankruptcy Code to (i) sell, assume, assign, and transfer to Successful Purchaser the Assumed Contracts pursuant to the provisions of sections 363 and 365 of the Bankruptcy Code, free and

-14-

clear of any and all Liens, and (ii) execute and deliver to Successful Purchaser such assignment documents as may be necessary to sell, assign, and transfer the Assumed Contracts.

14.    As soon as practicable following the Closing and as provided in the Asset Purchase Agreement, Successful Purchaser shall pay those cure amounts designated under the Asset Purchase Agreement or otherwise fixed by the Bankruptcy Court, if any, on the Assumed Contracts necessary to cure any existing default arising before or on the Petition Date under the Assumed Contracts or take such other action as will ensure the prompt cure of any such existing default.  Other than payment of such amounts, if any, no other action needs to be taken with respect to any of the Assumed Contracts in order for the Debtors to assume the Assumed Contracts under sections 365(b) and 365(f)(2) of the Bankruptcy Code.  Payment of the cure amounts designated under the Asset Purchase Agreement, or otherwise fixed by the Bankruptcy Court, shall constitute full and final settlement and satisfaction of any and all defaults, breaches or claims of pecuniary loss existing as of the Closing under any of the Assumed Contracts, and all non-debtor parties to the Assumed Contracts are bound by such cure amounts and shall not seek payment of any additional or other amounts (including any assignment or consent fees), or take any action against the Successful Purchaser or the Purchased Assets with respect to any claim for cure under any of the Assumed Contracts.

15.    The Debtors and the Successful Purchaser have satisfied the requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurances of future performance by the Successful Purchaser under the Assumed Contracts.

16.    Upon assumption and assignment to Successful Purchaser, each Assumed Contract is hereby deemed valid, binding and in full force and effect and enforceable by Successful Purchaser in accordance with its terms.  Pursuant to section 365(k) of the Bankruptcy

-15-

Code, the Debtors shall be relieved from any further liability with respect to each Assumed Contract from the date of its assignment. Successful Purchaser shall not, as a result of such assignment, assume any liability under any of the Assumed Contracts for events occurring prior thereto.

17.     The Debtors are hereby authorized, empowered, and directed, and, upon entry of this Order, shall have all the authority necessary, to perform such ministerial acts as may be required to effectuate and implement the Asset Purchase Agreement and any transaction contemplated thereby. The Debtors shall cooperate with and take all actions reasonably requested by Successful Purchaser to effectuate the Asset Purchase Agreement and any transaction contemplated thereby.

18.     All of the transactions and actions contemplated by this Order are properly authorized under sections 105, 363 and 365 of the Bankruptcy Code.

19.     The consideration provided by Successful Purchaser for the Purchased Assets (including the Assumed Contracts) under the Asset Purchase Agreement is fair and reasonable, and the result of open and competitive bidding, and may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code.

20.     This Court retains jurisdiction to enforce and implement the terms and provisions of the Asset Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and any agreements executed in connection therewith in all respects, including but not limited to, retaining jurisdiction (a) to compel delivery of the Purchased Assets (including the Assumed Contracts) to Successful Purchaser; (b) to resolve any disputes arising under or related to the Asset Purchase Agreement, except as otherwise provided therein; (c) to protect Successful

#16210449 v4

Purchaser, or the Purchased Assets, from and against any Liens; (d) to resolve any disputes related to the Assumed Contracts; and (e) to interpret, implement, and enforce the provisions of this Order.

21.     The transactions contemplated by the Asset Purchase Agreement are undertaken by Successful Purchaser, in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the sale to Successful Purchaser, unless such authorization is duly stayed pending such appeal.  Successful Purchaser is a good-faith purchaser, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

22.     The terms and provisions of the Asset Purchase Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors and their affiliates, and the successors and assigns of each of the foregoing, and any affected third parties, including all non-debtor parties to the Assumed Contracts, notwithstanding conversion or dismissal of the Debtors' bankruptcy cases or any subsequent appointment of any trustee under any chapter of the Bankruptcy Code, as to which trustee such terms and provisions likewise shall be binding.

23.     The failure specifically to include or refer to any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

24.     The Asset Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a

-17-

writing signed by the Debtors and Successful Purchaser, and consented to in writing by the DIP Lenders, which consent will not be unreasonably withheld or delayed, without further order of the Court; provided, that any such modification, amendment, or supplement does not have a material adverse effect on the estates of the Debtors.

25.    The automatic stay provisions of section 362 of the Bankruptcy Code are lifted and modified to the extent necessary to implement the terms and conditions of the Asset Purchase Agreement and the provisions of this Order.

26.    The Debtors are hereby authorized, empowered, and directed, and upon entry of this Order shall have the authority necessary, to apply Net Cash Proceeds (as defined in the DIP Credit Agreement) from the sale of the Purchased Assets, at the closing of such sale, to prepay the obligations then outstanding under the Superpriority Debtor-in-Possession Credit Agreement, dated as of April 26, 2012 between the Debtors and UniCredit Bank AG, as agent (as amended, the "DIP Credit Agreement"), in accordance with Section 6.1.2 of the DIP Credit Agreement.

27.    Baldwin County Electric Membership Corporate shall have ten (10) days from the entry of this Order to object to assumption of the following contract with Debtor Baldwin County Internet/DSSI Services, LLC and assignment to Successful Purchaser:  Pole Attachment License Corporation ("Contract").  Such objection shall state all grounds for objection, including but not limited to the proposed cure payment and adequate assurance of future performance.  If no such objection is received, the Contract shall be deemed assumed and assigned to Successful Purchaser without further order of the Court.  If any such objection is timely received, the Court shall hear and resolve such objection at the hearing previously scheduled for July 5, 2012.

-18-

28. The Baldwin County Account, Capitol Infrastructure Account, and the Miscellaneous Accounts in the names of Amenity Broadband, LLC (Acct. No. xxxxxxxxxxx6855), Baldwin County Internet/DSSI Service, L.L.C. (Acct. No. xxxxxxxxxxx6908), Baldwin County Internet/DSSI Service, L.L.C. (Acct. No. xxxxxxxxx5490), Broadstar, LLC (Acct. No. xxxxxxxxxxx6842), Capital Infrastructure, LLC (Acct. No. xxxxxxxxx4555), and SmartResort Co., LLC (Acct. No. xxxxxxxxxxx6851) and all funds in the foregoing are excluded from the sale.

29. The Debtors shall hold in reserve from the proceeds of sale, pending further Order of the Court, the amount of $52,003.00 on account of the lien asserted by Fish N. Wire, Inc. on the Purchased Assets, as set forth in the Notice of Objection, Docket No. 413, that are not Permitted Encumbrances under the Asset Purchase Agreement. All parties' rights are reserved regarding the validity, extent, priority and amount of such asserted lien on the Purchased Assets sold.

30. For purposes of this Order, "AT&T Agreement" means any written contract, agreement, license or other document that creates binding contractual obligations between AT&T and one or more of the Debtors; "AT&T" means AT&T Inc. and its subsidiaries and affiliates that are directly or indirectly controlled by AT&T Inc. Nothing in this Order authorizes or otherwise provides for the assumption, assignment or rejection, in whole or in part, of any AT&T Agreement. Nothing herein shall affect the rights which are hereby preserved of (i) the Debtors and the Successful Purchaser to seek to assume, assign or reject, in whole or in part, any AT&T Agreement in accordance with the terms of the Asset Purchase Agreement, and (ii) AT&T to oppose any such proposed assumption, assignment or rejection on any ground, including, but not limited to, the arguments set forth in AT&T's Objection To Debtors' Sale

-19-

Motions And The Assumption And Assignment Of Certain Executory Contracts, dated May 29, 2012 [Docket No. 411]. Nothing in this Order shall prejudice, estop, bar, impair or otherwise limit in any respect any party's rights under Section 365 of the Bankruptcy Code with respect to the AT&T Agreements.

31. For purposes of this Order, the "CenturyLink Entities" refer collectively to Madison River Communications, LLC, Coastal Utilities, Inc., CenturyLink Sales Solutions, Inc. f/k/a Embarq Solutions, Inc., Embarq Management Company, Embarq Florida, Inc., Gulf Telephone Company, Qwest Corporation, Qwest Communications Company, LLC and any affiliates of the foregoing entities. "CenturyLink Agreement" means any contract, agreement, tariff, license or other document (including all amendments, annexes, exhibits, addenda, schedules, contract orders, statements of work or other attachments to any such contract, agreement, tariff, license or other document) that creates binding contractual obligations between a CenturyLink Entity and one or more of the Debtors. Nothing in this Order authorizes or otherwise provides for the assumption, assignment or rejection, in whole or in part, of any CenturyLink Agreement. Nothing herein shall affect the rights which are hereby preserved of (i) the Debtors and the Successful Purchaser to seek to assume, assign or reject, in whole or in part, any CenturyLink Agreement in accordance with the terms of the Asset Purchase Agreement, and (ii) the CenturyLink Entities to oppose any such proposed assumption, assignment or rejection on any ground, including, but not limited to, the arguments set forth in Objection of the CenturyLink Entities to (1) Motion for an Order (A) (I) Approving Sale Procedures; (II) Approving a Break-Up Fee and Expense Reimbursement; (III) Scheduling a Hearing to Consider Sale of Assets; (IV) Approving Form and Manner of Notice Thereof; and (V) Granting Related Relief; and (B) (I) Authorizing the Sale of Assets Free and Clear of Liens, Claims,

#16210449 v4

Encumbrances and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief; (2) Motion for an Order (A) (I) Approving Sale Procedures for Other Assets; (II) Scheduling a Hearing to Consider Sale of Other Assets; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B) (I) Authorizing the Sale of Other Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief; and (3) Related Notices, dated May 24, 2012 [Docket No. 349]. Nothing in this Order shall affect, prejudice, estop, bar, impair or otherwise limit in any respect any party's rights under Section 365 of the Bankruptcy Code with respect to the CenturyLink Agreements.

32.    With respect to the Purchased Assets that are the subject of the Escambia County Tax Collector's ("County") asserted liens for the 2011 and 2012 calendar year ad valorem tangible personal property taxes ("Taxes") and as set forth in the Objection of Escambia County Tax Collector to Debtors' Motion for an Order (B)(I) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests and Related Documents Absent a Provision for Payment to a Senior Secured Creditor [Docket No.556], Mediacom will pay the County the sum of $4,781.69, if received on or prior to June 30, 2012, for the 2011 taxes; otherwise additional interest will accrue at the applicable statutory rate. Mediacom will be responsible for the post-Closing 2012 Taxes owing with respect to the Purchased Assets, as prorated, and taxes that are Permitted Encumbrances under the Asset Purchase Agreement. All rights and claims that the County may have against Mediacom with respect to the asserted lien

-21-

for Taxes are reserved. At Closing, Debtors shall hold in reserve from the proceeds of sale, pending further Order of the Court or agreement of the parties, (i) an estimate of the amount of the pre-Closing 2012 Taxes that are not Permitted Encumbrances under the Asset Purchase Agreement in the amount of $2,059.46, and (ii) a reserve in the amount of $5,055.00 for the County's attorneys' fees and costs, to be added to and included in the County's claim, only to the extent agreed or allowed as a secured claim by order of the Court. The County's asserted lien, to the extent determined valid and enforceable, for the 2012 Taxes, plus any interest that may accrue, costs, and attorneys' fees (all to the extent they are allowed as a secured claim) shall attach to the sale proceeds held in reserve until the Taxes determined to be valid and owing to the County with respect to the Purchased Assets are paid. All parties' rights are reserved regarding the validity, extent, priority and amount of such asserted tax liens, interest, attorneys' fees and costs on the Purchased Assets sold.

33.    The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order for fourteen days are hereby waived and this Order shall be final and effective, and the parties may consummate the transactions contemplated by the Asset Purchase Agreement, immediately upon entry.

34.    Nothing contained in any plan of reorganization or liquidation confirmed in this case or the order confirming any plan of reorganization or liquidation shall conflict with, modify or derogate from the provisions of this Order. Further, the provisions of this Order, and any actions taken pursuant hereto, shall survive the entry of an order confirming any plan of reorganization or liquidation of any of the Debtors or converting any of the Debtors' cases from chapter 11 to a case under chapter 7 of the Bankruptcy Code.

35.    Within two (2) business days following entry of this Order, the Debtors

will serve copies of it via first class mail upon: (i) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: David L. Buchbinder; (ii) counsel to the Official Committee of Unsecured Creditors, to the extent one has been formed; (iii) the Debtor's thirty (30) largest creditors; (iv) counsel to the DIP Lenders, UniCredit Bank AG, (a) Mayer Brown LLP, 1675 Broadway, New York, New York 10019-5820, Attn: Howard S. Beltzer and (b) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, DE 19801, Attn: Mark D. Collins; (v) counsel to the Capital Bank, (a) Ward and Smith, P.A., 1001 College Court, Post Office Box 867, New Bern, NC 28563-0867, Attn: Michael P. Flanagan and (b) Archer & Greiner, P.C., 300 Delaware Ave., Suite 1370, Wilmington, DE 19801, Attn: Jennifer L. Dering; (vi) counsel to Bank of America, N.A., Moore & Van Allen PLLC, 100 North Tryon Street, Suite 4700, Charlotte, North Carolina 28202-4003, Attn: Stephen E. Gruendel; (vii) counsel to the Purchaser, Baker Botts L.L.P. 30 Rockefeller Plaza, New York, New York 10112, Attn: John M. Winter; (viii) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets or that have been identified by Debtors or their advisors as a potential purchaser of the Purchased Assets; and (ix) all parties that have filed and not withdrawn requests for notices pursuant to Bankruptcy Rule 2002 ("Core Notice Parties").

36.    All entities who are presently, or on the Closing may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets either to (a) the Debtor prior to the Closing, for subsequent transfer to the Purchaser on the Closing, or (b) to the Purchaser on the Closing.

#16210449 v4

37.     This Court shall retain jurisdiction over the parties to the Asset Purchase Agreement and the Assumed Contracts with respect to any matters related to or arising under the Asset Purchase Agreement or under this Order.

Dated: June **14**, 2012
        Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

#16210449 v4