**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CAPITOL INFRASTRUCTURE, LLC, et al.,[1] | Case No. 12-11362-KG |
| Debtors. | (Jointly Administered) |
| | Hearing Date: 10/5/2012 @ 11:00 a.m. (ET) (**requested**) |
| | Obj. Deadline: 10/4/2012 @ 12:00 p.m. (ET) (**requested**) |

**MOTION OF THE DEBTORS, PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, FOR APPROVAL OF SETTLEMENT AGREEMENT AND RELEASE AS BETWEEN PFRS CROSSROADS CORP. AND CAPITOL BROADBAND, LLC**

The above-captioned debtors and debtors-in-possession (the "Debtors"), by and through their undersigned counsel, hereby respectfully move (the "Motion"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an Order approving the Debtors' participation in the Settlement Agreement And Release (the "Settlement Agreement")[2] between PFRS Crossroads Corp. and Capitol Broadband, LLC, and in support hereof, the Debtors respectfully state as follows:

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): Accelera Services, LLC (6589); Amenity Broadband, LLC (7012); BA Infrastructure SPE, LLC (6610); Baldwin County Internet/DSSI Service, L.L.C. (8858); Broadstar, LLC (8917); Capitol Broadband Development Company, LLC (4515); Capitol Broadband Management Corporation (4260); Capitol Broadband Ventures, LLC (3976); Capitol Infrastructure, LLC (0323); Capitol Infrastructure CP Funding, LLC (1008); CB Infrastructure SPE, LLC (4470); Infrastructure SPE, LLC (1144); and SMARTRESORT CO., L.L.C. (3706).

[2] A copy of the Settlement Agreement is appended hereto as **Exhibit A**.

**BACKGROUND**

1. On April 26, 2012 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code").[3]

2. The Debtors continue to hold and manage their assets as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in these cases. On August 8, 2012, the Office of the United States Trustee (the "Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee").

3. A description of the Debtors' business, capital structure, and the circumstances leading to the chapter 11 filings is set forth in the Declaration of Glen D. Lang in Support of Chapter 11 Petitions and First Day Motions (the "Lang Declaration") (D.I. 4).

4. Prior to the Petition Date, non-debtor Capitol Broadband, LLC ("Capitol Broadband"), who is the ultimate parent of the Debtors herein, entered into a lease agreement (together with all amendments thereto, the "Lease")[4] for the lease of certain commercial office space known as Crossroads Corporate Park in Cary, North Carolina (the "Property"), which was the Debtors' corporate headquarters on the Petition Date. By assignment on or about April 29, 2008, PFRS Crossroads Corp. ("PFRS") became the lessor under the Lease. While Capitol Broadband was and is the lessee under the Lease, the Debtors occupied and conducted operations from the Property. Specifically, Debtors used the Property for their corporate offices and certain "back office" functions. PFRS has asserted that Capitol Broadband has defaulted under the

---

[3] Debtor Capitol Broadband Management Corporation filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 28, 2012.

[4] A copy of the Lease is appended hereto as **Exhibit B**.

Lease and owes past due rent, interest, late fees, CAM charges and the like under the Lease in the amount of no less than $1,858,153.53, accruing through June 29, 2012.

5. Pursuant to multiple sale motions (*see* D.I. Nos. 11, 83), and Orders of this Court granting the relief requested in such motions (*see* D.I. Nos. 596, 597, 608), Debtors have sold substantially all of their assets (the "Sales") that were designated as desirable through a competitive auction process. Each of the Sales closed on June 22, 2012 (the "Closing Date").[5] No interest in the Property or the Lease was transferred in connection with any of the Sales.

6. As to those assets that have not been sold, Debtors have been engaged in the process of rejecting executory contracts, liquidating remaining equipment and other assets, and abandoning certain valueless assets. Further, in an effort to wind down their Chapter 11 proceedings, the Debtors have filed the Notice of Filing of Proposed Allocation Schedule (D.I. 603) and the Motion of the Debtors for Order Approving Allocation and Distribution of Sale Proceeds (D.I. 831) (the "Allocation Motion"), pursuant to which Debtors have proposed how the sale proceeds are to be allocated and have requested this Court's authorization to make distributions in accordance therewith. Finally, on September 14, 2012, Debtors filed their Motion For Order Converting Chapter 11 Cases To Chapter 7 And Staying Pending Litigation (D.I. 913) (the "Motion to Convert").

7. As a result of the Sales and other steps taken in these Chapter 11 cases, Debtors have liquidated substantially all of their assets, including operating assets, to cash, and have reconciled and paid most of their administrative claims. The purchasers in the Sales have taken over Debtors' operations as to acquired properties and assets and Debtors are liquidating or

---

[5] Debtors filed an additional sale motion requesting approval of the sale of assets related to two additional properties (D.I. 844), and the Court granted such motion (D.I. 897). This additional Sale closed on September 14, 2012.

abandoning, as the case may be, properties and assets that were not conveyed in any of the Sales. As such, Debtors are no longer conducting their pre-petition operations and have substantially reduced their employment ranks. Therefore, Debtors no longer need to occupy the Property that is the subject of the Lease. Indeed, Debtors vacated the Property at the end of June 2012.

8. On October 1, 2012, Capitol Broadband entered into the Settlement Agreement with PFRS.[6] The Settlement Agreement provides that Capitol Broadband and Debtors will pay $110,000 in full satisfaction of all amounts owed under the Lease and of all claims that PFRS may have in the Debtors' bankruptcy cases, with $77,301.23 to be paid by Debtors and with $32,698.77 to be paid by non-debtor Capitol Broadband. The portion to be paid by the Debtors is for unpaid rent under the Lease for the period from the Petition Date through June 22, 2012 (the closing date for the Debtors' asset sales to Hotwire and others ). In exchange, PFRS will grant a general release to Capitol Broadband and the Debtors, and Capitol Broadband and the Debtors likewise will grant a general release in favor of PFRS.

9. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

**RELIEF REQUESTED AND AUTHORITY FOR REQUESTED RELIEF**

10. Pursuant to this Motion, Debtors respectfully request the entry of an Order approving the Settlement Agreement appended hereto as **Exhibit A**. The relief requested herein is authorized by Bankruptcy Rule 9019. Bankruptcy Rule 9019, in relevant part, provides:

---

[6] PFRS is undertaking a final review of the Settlement Agreement and the version attached is signed only by Capitol Broadband. Debtors will file the countersigned version once received by PFRS.

> (a) . . . the court may approve a compromise or settlement. Notice shall be given to the creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the Court may direct.

11. In considering a Bankruptcy Rule 9019(a) motion, a court must "balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). In assessing this balance, the court should consider: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.* The Court should not determine whether the debtor is getting the best possible settlement, but rather whether the compromise is reasonable. *In re Integrated Health Services, Inc.*, 2001 WL 1820426 (Bankr. D. Del. 2001). "The responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised . . . but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness." *Integrated Health, supra* at *2 (*quoting Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). When determining the reasonableness of the compromise, "[t]he court is not supposed to have a 'mini-trial' on the merits." *In re Jasmine, Ltd.*, 258 B.R. 119, 123 (D. N.J. 2000); *In re Prudential Lines, Inc.*, 170 B.R. 222, 247 (S.D.N.Y. 1994) ("It is not the court's responsibility to conduct a 'mini-trial' on the merits in order to assess the reasonableness of the settlement"); *In re Edwards*, 228 B.R. 552, 569 (Bankr. E.D. Pa. 1998).

12. When deciding whether to approve a compromise, a court will normally accept the judgment of an estate representative as long as a legitimate business justification exists. *Martin*, 91 F.3d at 395; *Jasmine, Ltd.*, 258 B.R. at 125; *In re Marvel Entertainment*

*Group, Inc.*, 222 B.R. 243, 250 (D. Del. 1998). The decision to enter into a settlement is left to the estate representative's business judgment. *See In re Penn Central Transportation Co.*, 347 F. Supp. 1351, 1353 (E.D. Penn. 1972) (settlement agreement approved because it reflected exercise of business judgment). Once a valid business justification has been articulated, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (*quoting Smith v. Van Gorkam*, 488 A.2d 858, 872 (Del. 1985)); *see also Committee of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

13. The compromise set forth in the Settlement Agreement reflects the sound exercise of the Debtors' reasonable business judgment. While Debtors do not concede liability under the Lease, or that such liability would be in the amount claimed by PFRS, Debtors recognize the risk of liability on the claim given their occupancy of the Property, particularly as regards potential administrative claims for the post-petition period of occupancy. Furthermore, the Settlement Agreement resolves any such claims and eliminates any potential liability for a pre-petition damages claim by PFRS.

14. Even if litigation of issues attendant to the Lease did result in an outcome more favorable to Debtors, the costs attendant to such litigation would likely be material, and would likely consume any benefits that could be obtained through litigation, all with no guarantee that the ultimate outcome would be better for the Debtors' estates than that set forth in the Settlement Agreement.

#16780881 v3

15. Given the uncertainty of the outcome of litigation and the delay and expense attendant to same, approval of the Agreement is in the best interests of creditors and the estates. The Agreement will accomplish a reduction in PFRS' claims, certainty respecting the status of the Lease and the Property, and resolution of any potential administrative claims in these proceedings on account of the Debtors' occupancy of the Property.

WHEREFORE, the Debtors respectfully request that the Court enter an Order (i) granting this Motion, (ii) approving the Agreement, and (iii) granting such other and further relief in favor of the Debtors as the Court deems just and proper.

Dated: October 1, 2012
   Wilmington, Delaware

Respectfully submitted,

PEPPER HAMILTON LLP

 /s/ James C. Carignan
David B. Stratton (DE No. 960)
David M. Fournier (DE No. 2812)
James C. Carignan (DE No. 4230)
John H. Schanne II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: (302) 777-6500
Facsimile: (302) 421-8390

*Attorneys for the Debtors and Debtors in Possession*