IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| CAPITOL INFRASTRUCTURE, LLC, et al.,[1] | : | Case No. 12-11362 KG |
| | : | |
| | : | **Proposed Bid Procedures Hearing Date: March 27, 2013 at 2:00 p.m. (requested)** |
| Debtor. | : | **Proposed Bid Procedures Objection Deadline: At The Hearing** |
| | : | **Proposed Sale Hearing Date: May 15, 2013 at a time to be determined** |
| | : | **Proposed Sale Objection Deadline: May 8, 2013 at 4:00 p.m.** |

**TRUSTEE'S MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF CERTAIN OF THE ESTATE'S ASSETS, (B) APPROVING BREAK-UP FEE, AND (C) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE PROPOSED SALE AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (II) AN ORDER (A) APPROVING THE SALE, AND (B) GRANTING CERTAIN RELATED RELIEF**

Jeoffrey L. Burtch, as chapter 7 trustee (the "Trustee") for the estate (the "Estate") of

debtor SmartResort Co., LLC (the "Debtor"), moves for entry of an order, substantially in the

form attached hereto as Exhibit A (the "Bidding Procedures Order"): (a) establishing bidding and

auction procedures, (collectively, the "Bidding Procedures"), a copy of which is attached hereto

as Exhibit B, in connection with the potential sale(s) of certain lots of real property owned by the

Estate (the "Purchased Assets"), free and clear of all claims and any other interests, liens,

mortgages, pledges, security interests, rights of first refusal, obligations, and encumbrances of

any kind whatsoever (collectively, the "Interests"), except to the extent identified in a Successful

Bidder's (as defined below) purchase agreement; (b) approving the form and manner of sale

notices (the "Notice Procedures"); (c) approving (a) Break-Up Fee(s) (as defined below) to be

---

[1] The debtors are the following entities (last four digits of EIN in parentheses): Accelera Services, LLC (6589); Amenity Broadband, LLC (7012); BA Infrastructure SPE, LLC (6610); Baldwin County Internet/DSSI Service, L.L.C. (8858); Broadstar, LLC (8917); Capitol Broadband Development Company, LLC (4515); Capitol Broadband Management Corporation (4260); Capitol Broadband Ventures, LLC (3976); Capitol Infrastructure, LLC (0323); Capitol Infrastructure CP Funding, LLC (1008); CB Infrastructure SPE, LLC (4470); Infrastructure SPE, LLC (1144); and SmartResort Co., LLC (3706). The Debtors' corporate headquarters was located at 111 Corning Road, Suite 250, Cary, NC 27518.

granted in the Trustee's discretion; (d) scheduling an auction (the "Auction") if, subject to the Bidding Procedures, the Trustee receives more than one Qualified Bid (as defined below), and setting a date and time for a sale hearing (the "Sale Hearing") for the sale (the "Sale") of the Purchased Assets; and (e) granting certain related relief.

The Trustee further requests that, subject to the results of the Auction and the Bidding Procedures, the Court enter an order, substantially in the form attached hereto as Exhibit C (the "Sale Order"): approving and authorizing the Sale of the Purchased Assets free and clear of all Interests except to the extent set forth in a Successful Bidder's (as defined below) purchase agreement. In support, the Trustee states:

**Jurisdiction, Core Nature, and Venue**

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2.     On April 6, 2012, the Debtor and certain of its affiliates commenced the above-captioned bankruptcy cases (the "Bankruptcy Cases") by each filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

3.     On October 15, 2012, the Court entered an order converting the Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code. On or about October 16, 2012, the Trustee was appointed. The Trustee is in the process of liquidating the remaining assets of the Debtor and its affiliated debtors.

A.    **The Purchased Assets**

4.    The Purchased Assets consist of sixteen separate lots of undeveloped real property (the "Lots"), as identified on Schedule A of the Debtor's Schedules of Assets and Liabilities filed in the Bankruptcy Cases.  The Lots are located in certain planned residential communities, and are designated for residential use.  Eleven of the Lots, ranging from .23 to .39 acres, are located in a development known as Cobblestone Park, in Blythewood, Richland County, South Carolina.  The Cobblestone Park development consists of 900 lots in total, on which 100 homes have already been built.  The development features attractive amenities, including a twenty-seven hole golf course, a fitness facility, a six court tennis complex, a resort-style pool, basketball and volleyball courts, and a large sports field.  In addition, a clubhouse is presently under development that will feature casual dining, a golf shop, and meeting rooms.  The infrastructure for the development is already in place.

5.    Four of the Lots, ranging from .19 to .3 acres, are located in a development known as The Conservatory, in Palm Coast, Florida.  The Conservatory development consists of 340 lots in total, and features a Tom Watson Signature design golf course, with man-made lakes and waterfalls.  The infrastructure for the development is already in place.

6.    Finally, one lot, of 1.22 acres, is located in a development known as The Blue Ridge Mountain Club, in Blowing Rock, North Carolina.  This development consists of 425 lots in total, of which two-hundred sixty-five have already been sold, including the lot adjacent to the Lot owned by the Estate.  The development features 6,212 acres of pristine mountain views, dramatic landscapes, waterfalls, natural swimming holes, hiking trails, and trout-filled creeks.  The infrastructure for the development is already in place.

**B.**    **The Trustee's goal of selling the Purchased Assets and marketing efforts**

      7.     The Trustee intends to sell the Lots pursuant to a competitive sale process under

11 U.S.C. § 363.  With the assistance of his broker, GA Keen Realty Advisors (the "Broker"),

the Trustee has been working diligently to market the Lots for sale, and is engaged in discussions

with several potential purchasers.  He has already received two offers for certain of the Lots, and

expects to receive additional offers in the near future.  However, to date no party has reached an

agreement with the Trustee to serve as a "stalking horse" bidder.

      8.     In the exercise of his business judgment, the Trustee has decided to conduct an

open auction process, pursuant to the procedure described in the attached Bidding Procedures.

The Trustee believes that this process will enable him to solicit competing bids in a manner

reasonably calculated to achieve maximum possible value for the Estate.

**C.**    **The Bidding Procedures**

      9.     To ensure that the Estate receives maximum possible value for the Purchased

Assets, the Trustee has devised the Bidding Procedures to govern a competitive bidding process

(the "Bidding Process").  The Bidding Procedures include the following provisions:[2]

- o  **Potential Bidders**.  To participate in the Bidding Process, each interested person or
  entity must be deemed by the Trustee, after consultation with his legal counsel, to be
  reasonably likely to be able to fund and complete the consummation of the proposed
  transaction on terms satisfactory to the Trustee (in the Trustee's sole discretion)  and
  within the time frame acceptable to the Trustee if selected as the Successful Bidder
  (as defined below).  As promptly as reasonably possible, the Trustee will determine
  and notify the interested person or entity if such person or entity is acceptable and
  deem them a "Potential Bidder."

- o  **Qualified Bids**.  A proposal ("Bid") received from a Potential Bidder is a "Qualified
  Bid" if it:

  - i.    is received by the Bid Deadline (as defined below);

---

[2] In the event of any inconsistencies between the description of the Bidding Procedures contained in this Motion and the language of the Bidding Procedures themselves (attached as Exhibit B to this Motion), the language of the Bidding Procedures shall govern.

ii.   provides for the Potential Bidder's purchase, on an "as is, where is" basis, of some or all of the Lots comprising the Purchased Assets;

iii.  includes a copy of a definitive purchase agreement, signed by an authorized representative of such Potential Bidder, in form and substance satisfactory to the Trustee in his reasonable discretion;

iv.   is not subject to any due diligence or financing conditions, or board or other approval;

v.    is accompanied by a deposit of immediately available funds in an amount equal to the greater of $5,000 or 10% of the proposed purchase price (the "Deposit");

vi.   includes written evidence of an unconditional commitment for financing (by a credit-worthy bank or financial institution that shall provide such financing without alteration of conditions or delays) or other evidence of ability to consummate the transaction, as may be acceptable to the Trustee in his reasonable discretion;

vii.  is reasonably likely (based on availability of financing, experience, and other considerations) to be consummated, if selected as the Successful Bid (as defined below), within a timeframe acceptable to the Trustee in his reasonable discretion; and

viii. is irrevocable until the earlier of: (a) forty-five (45) days after the Court authorizes and approves the Successful Bid, and (b) the closing date of the transaction with the Successful Bidder or Alternate Bidder (as defined below).

A Potential Bidder that makes a Qualified Bid is a "Qualified Bidder."

o  **Due Diligence**. The Trustee may in his reasonable business judgment, and subject to competitive and other business concerns, afford each Potential Bidder (until the date of the Auction) with such due diligence access to the Purchased Assets and/or material concerning the Purchased Assets as the Trustee deems appropriate, after consultation with his counsel.

o  **Bid Deadline**. A Potential Bidder that desires to make a Bid must deliver written copies of its Bid, via hand delivery or overnight mail, to the Trustee, care of his counsel, Cozen O'Connor, 1201 N. Market St., Ste. 1001, Wilmington, DE 19801, Attn. Mark E. Felger, Esquire, with a copy to GA Keen Realty Advisors, LLC, 130 W. 42 St, Ste. 1001, New York, NY 10036, Attn. Harold Bordwin, so that the Bid is *actually received* by **12:00 p.m. (Noon) (ET) on May 8, 2013** (the "Bid Deadline"). The Trustee may extend the Bid Deadline once or successively but is not obligated to do so. If the Trustee extends the Bid Deadline, he shall promptly notify all Potential Bidders of such extension.

o **No Qualified Bids**. In the event that the Trustee does not receive any Qualified Bids, then the Trustee will not hold the Auction. In his sole discretion, he will either continue marketing some or all of the Purchased Assets, and/or cease pursuing a sale of some or all of the Purchased Assets at this time.

o **One Qualified Bid**. In the event that the Trustee receives only one Qualified Bid, the Trustee will not hold the Auction. Instead, he shall either shall seek approval of the Sale pursuant to such Qualified Bid or, in his discretion, shall reject such Qualified Bid and, in his discretion, either continue marketing some or all of the Lots or cease pursuing a Sale of some or all of the Lots at this time.

o **Multiple Qualified Bids, But No More Than One Per Lot**. In the event that the Trustee receives multiple Qualified Bids and each Qualified Bid specifies (a) different Lot(s) than the other Qualified Bids (i.e. no single Lot is subject to competing offers), then the Trustee, in his discretion, may or may not conduct the Auction. In the event that he does not conduct the Auction under these circumstances, the Trustee, in his discretion, may either seek approval of the Sale pursuant to the terms of one or more of the Qualified Bids, and/or may reject one or more of the Qualified Bids. In the event that the Trustee elects to reject one or more of the Qualified Bids, then the Trustee, in his discretion, may either continue marketing some or all of the unsold Lots and/or cease pursuing a Sale of some or all of such Lots at this time.

o **Auction Procedure**.

- Subject to the preceding paragraph, if more than one Qualified Bid is received, the Trustee shall conduct the Auction on **May 14, 2013, beginning at 11:00 a.m. (ET)**, or such other time as the Trustee shall notify all Qualified Bidders. The Auction will take place either over the internet, on a website to be created by the Broker, or via conference call, at the Trustee's discretion. Detailed instructions for accessing the website and/or dialing in to the conference call, and participating in the Auction will be provided to Qualified Bidders prior to the Auction. Only Qualified Bidders who have timely submitted Qualified Bids shall be eligible to participate in the Auction. No Bids shall be considered by the Trustee unless the bidding party has submitted a Qualified Bid and participates in the Auction (if an Auction is held). At least one (1) business day prior to the Auction, each Qualified Bidder must inform the Trustee whether it intends to participate in the Auction.

- **Starting Auction Bid**. Prior to the start of the Auction, the Trustee shall evaluate all Qualified Bids and shall determine what constitutes the best offer(s) for the Purchased Assets (the "Starting Auction Bid"). The Trustee shall announce the Starting Auction Bid at the commencement of the Auction. If Qualified Bids relating to different Lots are received, the Trustee may, in his discretion, determine and announce separate Starting Auction Bids relating to separate Lots or packages of Lots.

- **Minimum Overbids**. The Trustee, in his discretion, may set a minimum overbid amount. The Trustee shall announce the minimum overbid amount, if any, at the beginning of the Auction. If Qualified Bids relating to different Lots are received, the Trustee may, in his discretion, set separate minimum overbid amounts for separate Lots or packages of Lots. The Trustee, in his discretion, may alter the minimum overbid amount(s) during the course of the Auction.

- **Additional Rules**. The Trustee, after consultation with his counsel and in his sole discretion, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction (e.g., the amount of time allotted to make subsequent Bids), provided that such rules: (i) are not inconsistent with the Bankruptcy Code or any order of the Court; and (ii) are disclosed to each Qualified Bidder at the Auction.

- **Successful Bidder**. At the conclusion of the Auction, the Trustee shall, in consultation with his counsel: (i) review each Qualified Bid (as may have been increased during the Auction) on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummation of the Qualified Bid; and (ii) identify the best bid (the "Successful Bid") and the bidder making such Bid (the "Successful Bidder"). If Qualified Bids relating to different Lots are received, the Trustee may, in his discretion, identify separate Successful Bidders for separate Lots or packages of Lots. In determining the Successful Bidder, the Trustee shall include any Break-Up Fee(s) that may be applicable. The Trustee shall promptly seek confirmation that such Qualified Bidder(s) is/are the Successful Bidder(s) and that such proposals is/are the Successful Bid(s) at the Sale Hearing.

- **Alternate Bidder.** If the Trustee receives more than one Qualified Bid, the Trustee may, in his discretion and in consultation with his counsel, identify the next highest or best Qualified Bid (the "Alternate Bid" and, such bidder, the "Alternate Bidder"), based on the same factors relevant to his determination of the Successful Bid. If applicable, the Trustee may, in his discretion, identify separate Alternate Bidders for separate Lots or packages of Lots. Following approval of the Sale to the Successful Bidder(s), if the Successful Bidder(s) fail to consummate the Sale for any reason, then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Trustee will be authorized, but not directed, to consummate the Sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Court. The Alternate Bid(s) shall remain open until the earlier of (a) forty-five (45) days following the entry of the Sale Order or (b) the consummation of the Sale to the Successful Bidder.

o **Sale Hearing**. The Trustee is requesting that the Court schedule the Sale Hearing on or about **May 15, 2013**, at which the Trustee shall seek entry of an order or orders, among other things, authorizing and approving the proposed transaction(s) with the Successful Bidder(s), as determined by the Trustee in consultation with his counsel and in accordance with the Bidding Procedures, pursuant to the terms and conditions

set forth in the Successful Bid. The Trustee's presentation to the Court of the Successful Bid(s) and, if applicable, the Alternate Bid(s) will not constitute the Trustee's acceptance of such Bids, until such Bids are approved by the Court at the Sale Hearing.

o   **Return of Deposits**. All Deposits, but excluding the Deposits of the Successful Bidder(s) and Alternate Bidder(s) (which, in the case of the Deposit(s) of the Alternate Bidder(s), shall be returned within three (3) business days of the closing of the Sale to the Successful Bidder(s)), shall be returned to Qualified Bidders within five (5) business days after the date of the Auction.

10.    Based on the foregoing, approval of the Bidding Procedures would result in the establishment of the following timeline:

   (i)    May 8, 2012 at 12:00 p.m. (ET) – Deadline to Submit Qualified Bids.

   (ii)   May 14, 2012 at 11:00 a.m. (ET) – Auction.

   (iii)  May 15, 2013 at __:_0_ .m. (ET) – Sale Hearing.

**D.    The Notice Procedures**

11.    The Trustee proposes the following Notice Procedures in connection with the Sale:

o   **Notice**. The Trustee will give notice (the "Notice of Auction and Sale Hearing") immediately after the entry of the Bidding Procedures Order of the Bidding Procedures, the time and place of the Auction, the time and place of the Sale Hearing, and the objection deadline for the Sale Hearing by sending a notice, substantially in the form attached hereto as Exhibit D, to (i) the Office of the United States Trustee; (ii) the debtors in the Bankruptcy Cases; (iii) the Internal Revenue Service, (iv) all other applicable state and federal taxing authorities having jurisdiction over the Purchased Assets; (v) the United States Department of Justice; (vi) The South Carolina, Florida, and North Carolina state attorneys general; (vii) the parties listed as creditors in the Debtor's bankruptcy Schedules as filed in the Bankruptcy Cases; (viii) all parties that have requested notice pursuant to Bankruptcy Rule 2002 in the Bankruptcy Cases; and (ix) all other entities known to have expressed an interest in a transaction with respect to any and/or all of the Purchased Assets (collectively, the "Notice Parties").

o   **Objections**. The Notice of Auction and Sale Hearing will specify that objections (if any) to the relief requested by this Motion shall be set forth in writing and shall specify with particularity the grounds for such objections or other statements of position, and shall be filed and served upon the following parties by the date that is seven (7) days prior to the Sale Hearing (the "Objection Deadline"): (i) the Trustee,

care of his counsel, Cozen O'Connor, 1201 N. Market St., Ste. 1001, Wilmington, DE 19801, Attn. Mark E. Felger, Esquire; and (ii) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19081 (together, the "Service Parties"). The Trustee requests that the Court order that the failure to file and serve objections by the Objection Deadline and in accordance with the foregoing procedure shall be deemed a waiver of such objections and the objecting party shall be forever barred from asserting such objections with respect to the consummation and closing of the Sale. The Notice of Auction and Sale Hearing will further state that any objections filed and served in accordance with the foregoing procedure will be heard by the Court at the Sale Hearing.

o **Publication Notice.** The Trustee will publish the Notice of Auction and Sale Hearing within five (5) business days after entry of the Bidding Procedures Order, in such publications as the Trustee and his advisors determine will promote the marketing and sale of the Purchased Assets.

12.    All objections to the relief sought at the Sale Hearing must: (i) be in writing; (ii) state with specificity the nature of such objection (with appropriate documentation in support thereof); (iii) comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Procedure; and (iv) be filed with this Court and served upon (so as to be received by) the Service Parties on or before the Objection Deadline.

### Relief Requested

13.    The Trustee seeks expedited entry of the Bidding Procedures Order: (a) approving the Bidding Procedures, (b) approving (a) Break-Up Fee(s) to be provided in the Trustee's discretion, (c) scheduling the Auction and Sale Hearing and approving the Notice Procedures, and (d) granting certain related relief.

14.    Given the nature of the relief requested, the Trustee believes that entry of the Bidding Procedures Order on an expedited basis is warranted.

15.    In addition, at the conclusion of the Sale Hearing, the Trustee will seek entry of the Sale Order: (i) authorizing the sale of all or a portion of the Purchased Assets to the Successful Bidder(s); and (ii) granting certain related relief.

## Basis for Relief Requested

**A.    The Bidding Procedures are fair and designed to maximize the value received for the Purchased Assets**

16.    The Bidding Procedures are designed to maximize the value received for the Purchased Assets by facilitating a competitive bidding process in which all Potential Bidders are encouraged to participate and submit competing bids.

17.    The Bidding Procedures provide Potential Bidders with more than the twenty-one days' notice of the Sale Hearing required by Federal Rule of Bankruptcy Procedure 2002, and provide Potential Bidders with sufficient opportunity to acquire the information necessary for submission of a timely and informed bid.  Through his Broker, the Trustee is engaged in discussions with a number of interested parties.  He has already received two offers for certain of the Lots, and expects to receive other offers in the near future.

18.    Through his Broker, The Trustee has been marketing the Purchased Assets for several weeks, and has largely familiarized himself with the universe of participants and parties who may have a realistic interest in bidding for the Purchased Assets.  The Trustee does not believe that additional marketing would uncover any further serious bidders, nor does the Trustee believe that extensive due diligence will be required by any prospective bidder in order to submit an offer for all or certain of the Lots.  Thus, the Trustee believes that the proposed auction time line is sufficient to allow him to maximize the value of the Estate's assets.

**B.    The Break-Up Fee(s)**

19.    Although the Trustee does not presently have a stalking horse bidder, he believes that such a bidder may emerge at some point prior to the Auction (a "Potential Stalking Horse"). The Trustee believes that having the ability to offer a reasonable break-up fee not in excess of

three percent (3%) of the bid in question (the "Break-up Fee") to a Potential Stalking Horse prior

to the Auction may assist him in realizing maximum value for the benefit of the Estate.

20.    If Qualified Bids relating to different Lots are received, the Trustee may, in his

discretion, wish to identify separate Potential Stalking Horses for separate Lots or packages of

Lots.  Under such circumstances, the Trustee wishes to have the ability to offer, in his discretion,

a Break-Up Fee to each separate Potential Stalking Horse.  For the sake of clarity, under no

circumstances would the Trustee offer more than one Break-Up Fee relating to any single Lot.

21.    The United States Court of Appeals for the Third Circuit has identified at least

two instances in which bidding incentives may benefit the estate.  First, a break-up fee or

expense reimbursement may be necessary to preserve the value of the estate if assurance of the

fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not

have been made and without which bidding would have been limited." Calpine Corp. v. O'Brien

Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 537 (3d Cir. 1999).

Second, if the availability of break-up fees and expense reimbursement were to induce a bidder

to research the value of the debtor and convert that value to a dollar figure on which other

bidders can rely, the bidder may have provided a benefit to the estate by increasing the likelihood

that the price at which the debtor is sold will reflect its true worth.  Id.

22.    In O'Brien, the Court of Appeals reviewed the nine factors set forth by the lower

court as relevant in deciding whether to award a break-up fee.  Such factors are:

(A)    the presence of self-dealing or manipulation in negotiating
the break-up fee;

(B)    whether the fee harms, rather than encourages, bidding;

(C)    the reasonableness of the break-up fee relative to the
purchase price;

(D)    whether the unsuccessful bidder placed the estate property

in a "sales configuration mode" to attract other bidders to the auction;

(E)     the ability of the request for a break-up fee to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders, or attract additional bidders;

(F)     the correlation of the fee to a maximization of value of the debtor's estate;

(G)     the support of the principal secured creditors and creditors committees of the break-up fee;

(H)     the benefits of the safeguards to the debtor's estate; and

(I)     the substantial adverse impact of the break-up fee on unsecured creditors, where such creditors are in opposition to the break-up fee.

Id. at 536.

23.     The Break-Up Fee(s) would allow the Trustee to set a floor for the Purchased Assets and, insist that competing bids be materially higher or otherwise better than such floor – a clear benefit to the Estate.

24.     The Trustee should be permitted, in the exercise of his business judgment, to offer (a) Break-Up Fee(s) of no more than 3% of an applicable Potential Stalking Horse's proposed bid in order to preserve the value of the Estate, promote more competitive bidding, and maximize the value of the Purchased Assets.  Accordingly, the Trustee requests that the Court authorize him to provide the Break-Up Fee(s) to (a) Potential Stalking Horse(s).

25.     In the event that he wishes to offer (a) Break-Up Fee(s), the Trustee intends to provide notice of such proposed Break-Up Fee(s) to the Office of the United States Trustee (the "U.S. Trustee").  The Trustee proposes the following procedure concerning any proposed Break-Up Fee, which is set out in the attached proposed Bidding Procedures Order.

If the U.S. Trustee objects to the Break-Up Fee within five (5) days of receipt of notice of the Trustee's intent to provide the Break-Up Fee, then the Trustee may

seek Court approval of the Break-Up Fee upon five (5) days' notice to the U.S. Trustee. Any notice seeking approval of a Break-Up Fee in accordance with this paragraph must disclose the Potential Stalking Horse's identity and further disclose any prior connections between the Potential Stalking Horse and the Debtor and/or its Estate, including whether the Potential Stalking Horse is or includes any insiders of the Debtor and/or its Estate, and when negotiations started between the Potential Stalking Horse, or any predecessors thereto, and the Trustee. If the U.S. Trustee does not object following the required notice, then the Break-Up Fee shall be deemed approved.

The Trustee believes that this procedure will serve as a safeguard to ensure that the applicable standards are met, and this process has been approved in other cases in this District.

**C.**      **The Sale should be approved under 11 U.S.C. § 363(b)**

26.    11 U.S.C. § 363(b)(1) provides, "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." A court should approve a trustee's sale or use of assets outside the ordinary course of business if the trustee demonstrates a sound business justification for the proposed transaction. See, e.g., In re Martin, 91 F.3d 389, 395 (3d Cir. 1996); In re Abbott's Dairies of Pa., Inc., 788 F.2d 143 (3d Cir. 1986). Once the trustee articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" In re S.N.A. Nut Co., 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995); In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992); In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("A presumption of reasonableness attaches to a Debtor's management decisions").

27.    The Trustee has sound business justifications for selling the Purchased Assets at this time. The Debtor is not operating, and the Trustee has no use for any of the Purchased Assets. At the same time, the Purchased Assets are accruing property taxes, and possibly other

costs. Consequently, the Trustee's selling the Purchased Assets would both generate cash for the Estate and, at the same time, stem the incurrence of such liabilities. In addition to the accrual of tax and other possible liability, the Trustee is concerned that the longer the Lots remain unsold, the more difficult it may become to attract buyers. Consequently, the Trustee wishes to complete a sale as expeditiously as possible.

28.     The Trustee proposes to implement a competitive bidding process, which will enhance his ability to receive maximum value. Consequently, the fairness and reasonableness of the consideration to be received by the Trustee will ultimately be demonstrated by a "market check" through the auction process, which is the best means for establishing whether the Trustee is receiving a fair and reasonable price for the Purchased Assets.

29.     In addition, all parties in interest will receive adequate notice of the Bidding Procedures and Sale Hearing as set forth above. Such notice is reasonably calculated to provide timely and adequate notice to the Estate's major creditor constituencies, those parties most interested in this case, those parties potentially interested in bidding on the Purchased Assets, and others whose interests may be impacted by the proposed Sale.

30.     In light of these circumstances, the Trustee's proposed Sale and related procedures are consistent with sound business judgment, and meet the applicable standard under section 363(b)(1).

**D.     The Sale should be free and clear of Interests pursuant to 11 U.S.C. § 363(f)**

31.     11 U.S.C. §363(f) permits a trustee to sell assets free and clear of all liens, claims, interests, charges, and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).

32.     Under section 363(f), a Trustee may sell all or any part of the debtor's property fee and clear of any and all liens, claims, or interests in such property if: (1) such a sale is permitted under applicable non-bankruptcy law; (2) the party asserting such a lien, claim, or interest consents to such sale; (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.

33.     As section 363(f) is written in the disjunctive, a trustee need only meet one of the five conditions of section 363(f). The Debtor's Schedule D filed in this case does not list any secured claims. To the extent that any secured claims may exist, the Trustee will be able to demonstrate at the Sale Hearing that he can satisfy one or more of these conditions with respect to each party holding an Interest in the Purchased Assets. At a minimum, the Trustee expects that he will satisfy the second and fifth of these requirements, if not others as well.

**E.     The Successful Bidder should be entitled to the protections of 11 U.S.C. §363(m)**

34.     Pursuant to 11 U.S.C. § 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. See In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 9 (1st Cir. 1993); In re Willemain v. Kivitz, 764 F.2d 1019, 1023 (4th Cir. 1985); In re Congoleum Corp., No. 03-51524, 2007 WL 1428477, at *2 (Bankr. D.N.J. May 11, 2007).

35.     To the best of the Trustee's knowledge, none of the parties that have expressed an interest in bidding on the Purchased Assets have any relationship with the Debtor, its Estate, or the Trustee. In response to any potential objection, the Trustee will present facts at the Sale Hearing demonstrating that any Successful Bidder for the Purchased Assets has negotiated at arm's length, and that all parties were represented by their own counsel.

36.    Accordingly, the proposed Sale Order will include a provision that the Successful Bidder for the Purchased Assets is a "good faith" purchaser within the meaning of 11 U.S.C. § 363(m). The Trustee believes that providing any Successful Bidder(s) with such protection will ensure that the Estate will receive the maximum possible price for the Purchased Assets.

**F.    Relief from Federal Rule of Bankruptcy Procedure 6004(h) is warranted**

37.    Federal Rule of Bankruptcy Procedure 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Trustee requests that the Court waive this fourteen day stay, and that the Sale Order be effective immediately.

38.    The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and waive the fourteen day stay, the leading bankruptcy treatise suggests that the fourteen day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., ¶6004.10 at 6004-18 (L. King, 15th rev. ed. 2008). The treatise further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.

39.    As described above, time is of the essence. The Debtor has ceased all operations, and the Estate is continuing to accrue tax liability and other costs in connection with the Lots. The Trustee wishes to move expeditiously in order to prevent a further deterioration in net value to the Estate. Consequently, a waiver of the Rule 6004(h) stay is in the Estate's best interest.

**Notice**

40.    Notice of this Motion will be given to the Notice Parties.  In light of the nature of the relief requested, the Trustee respectfully submits that no further notice is necessary.

WHEREFORE, the Trustee respectfully requests that the Court enter the Bidding Procedures Order substantially in the form attached hereto as Exhibit A: (i) approving the Bidding Procedures, (ii) approving the Break-Up Fee(s); (iii) scheduling the Auction and Sale Hearing and approving the Notice Procedures, and (iv) granting related relief; and after a Sale Hearing, enter the Sale Order substantially in the form attached hereto as Exhibit C: (i) approving the sale of the Purchased Assets to the Successful Bidder(s), and (ii) granting certain related relief and such other relief as the Court may deem appropriate.

Dated: March 20, 2013

COZEN O'CONNOR

*/s/ Simon E. Fraser*
Mark E. Felger (No. 3919)
Simon E. Fraser (No. 5335)
1201 North Market Street, Suite 1001
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013

*Special Counsel for the Trustee*